CITY OF GULFPORT, MISS. *v.* DANIELS

No. 40530 October 7, 1957 97 So. 2d 218

*Owen T. Palmer, Jr., Charles R. Galloway,* Gulfport, for appellant.

*Aubert Dunn, Viola Hilbert,* Gulfport, for appellee.

ETHRIDGE, J.

This suit was brought by the City of Gulfport, appellant, in the Chancery Court of Harrison County against appellee, Mrs. Eugene L. Daniels, to enjoin her from the alleged violation of a city zoning ordinance. The chancery court held that the complainant's evidence was "inconclusive" and insufficient to show that defendant was violating the ordinance.

For sometime prior to October 1955 Mrs. Daniels operated a child nursery and kindergarten at Mississippi City, which is several miles from Gulfport. Its business name was the "Day and Nite Nursery and Wonderland Kindergarten". In that connection she had a licensed teacher to teach the children, and a good bit of school and play equipment. Several children boarded with her in Mississippi City, that is, they lived at her place and received their meals there, for a fee paid by their parents. Two or three of them came with her when she moved to Gulfport.

In September 1955 she and her husband leased a large house in a residential area in Gulfport. They have eight young children of their own. Defendant apparently intended to continue operation of the Day and Nite Nursery and Wonderland Kindergarten in Gulfport, in the same manner in which she had operated it in Mississippi City. However, she inquired of several of her new neighbors, and they expressed objection to it. Because of the size of her own family, she and her husband spent about $3,000 to enlarge the house which they had leased at 1506 19th Avenue, Gulfport, primarily by enclosing a large front porch and thereby making several additional rooms. Most of the kindergarten and play equipment which she had used at Mississippi City was stored in the attic, although three sets of swings were placed in the yard along with some smaller items of play equipment. This was not an excessive amount for her own children.

After Mrs. Daniels moved into the house on 19th Avenue in Gulfport, she proceeded to offer boarding facilities to children, and took as boarders with her six children. At no time has she had in the Gulfport residence more than six children as boarders. At the time of the trial in October 1956 she had six children boarding with her, some during the day only, others around the clock. One was in the second and one in the third grade, staying there for two or three weeks while their parents were out of town, for a fee of $18 per week each. A little girl age five had been boarding with her since she was 18 months old, for $16 per week. Another girl age three was staying for two or three weeks, at $16 per week. Two other children, age six weeks and seventeen months, respectively, stayed with defendant daily while their mothers taught school and worked as a secretary, at fees of $7.50 and $8.50 per week. Appellee furnishes the children in school their school lunch money. She feeds them their meals. She employs three colored servants, a cook, a housekeeper, and a maid who work until 8 P.M., after which appellee does any other work in connection with the boarding children which might be necessary. She bills the parents for any medical services or clothes which it becames necessary for her to obtain for the children. Of course her own eight children live in the house in addition to the six who are there during the day and some of them at night.

The question is whether this limited business conducted by Mrs. Daniels at her family's home on 19th Avenue in Gulfport constitutes a violation of the zoning ordinances. Section 3 of Ordinance 611, enacted in 1940, provides use regulations for residential districts. Appellee's home is in a residential district. Section 3 states in part:

"In a Residential District, no building shall be erected, altered or used for any purpose nor shall any premises be used for any purpose except: , , , , ,

"4. The taking of boarders or the leasing of rooms by a resident family, provided that in such boarding or rooming house the total number of boarders or roomers does not exceed six for each dwelling." Such residential districts may be used also for a detached dwelling for not more than two families, attached one or two family row houses, apartment houses, church, school, non-commercial library or museum, club, hospital or sanitorium, but not for the care of the feeble minded or of animals, etc.

Appellee contends that the business which she conducts on a limited scale in her family home is within the quoted part of Section 3, being the taking of boarders not exceeding six.

Section 25 of Ordinance 611 contains certain definitions, including one of a "boarding house": "The taking of boarders or the furnishing of meals to persons by the resident family of a dwelling, such persons residing in the City of Gulfport on a permanent or semi-permanent basis (one month or longer)."

In 1953 the Mayor and Board of Commissioners of Gulfport enacted Ordinance No. 850, which amended No. 611 by adding an additional section. No. 850 recited that in numerous cases hardships are worked upon citizens because there is not a provision for the issuance of temporary licenses or permits for the carrying on of certain types of businesses in the residental districts, and that it was for the best interest of all to have such a clause. The Mayor and Board of the City may in their discretion issue a temporary license or permit not to exceed one year to operate in the residential area certain businesses "described as: Physicians, lawyers, insurance, real estate, beauty parlors, child nursery or kindergarten, barber shop, architects, and similar type business".

Zoning ordinances should be given a fair and reasonable construction, in the light of their terminology, the objects sought to be obtained, the natural import of the words used in common and accepted usage, the setting

in which they are employed, and the general structure of the zoning ordinance as a whole.

A boarding house is a place where the guest is under an express contract for food and lodging at a certain rate for a period of time. It is less public in character than an inn or hotel, and arranges with its guests to provide for them during some more or less definite period. It also involves the maintenance of the establishment by a private family living in the house. 5 Words & Phrases (Perm. ed. 1940) pages 568, et seq. This generally accepted definition is consistent with that in Ordinance 611, which permits in a residential district the taking of not more than six boarders by a resident family. The quoted definition of boarding houses in Section 25 of the Ordinance does not alter the commonly accepted meaning of a boarding house, except as to the limitation in number, and the requirement that the persons should be city residents on a permanent or semi-permanent basis.

■■ ■ The great weight of the testimony supports what we must assume the chancery court found in its final decree, that the six children who were boarding with Mrs. Daniels in her family's home met these requirements. We think that within the terms of the ordinance her limited business constituted the taking of boarders within the permissible uses in a residential district. The ordinance does not designate what the ages of such boarders should be, assuming such a classification would be reasonable. It certainly does not prelude the boarding of children. In fact, the "taking of boarders" means just what it says, the taking of any person to board with a resident family within the stated definition.

■■ ■ The fact that the two or three infants in the group of six incidentally require the type of nursing generally associated with children does not remove appellee's business from the category of a boarding house. The ordinance indicates no such limitation, and we can not imply one. Moreover, there is no evidence to indicate

that the activities of the six boarding children constitute a nuisance. City of Yonkers v. Horowitz, 222 App. Div. 297, 226 N. Y. Supp. 252 (1928), is not controlling. The court was there dealing with different zoning provisions. Moreover, the alleged boarding house had from 20 to 25 children, from the ages of seven to fifteen years, and the court observed that their normal but noisy and raucous activities constituted a source of annoyance in that quiet residential neighborhood.

In Shegda v. Village of Lancaster, 80 N. Y. Supp. 2d 517 (1948), the Village's zoning order was much broader than that in the Horowitz case. Appellant was operating a convalescent home in which people were boarded who were recovering from serious illnesses or oprations. They went there primarily to rest and recuperate. Holding that this business in a residential district was the equivalent of a boarding house, the court said: "They differ in a very small degree from ordinary boarders. The fact that a nurse is on the premises to render any necessary service is not sufficient to take the proposed convalescent home of the plaintiffs out of the category of a boarding house."

Crain v. City of Louisville, 298 Ky. 421, 182 S. W. 2d 787 (1944) was a suit by Miss Crain against the city for a permit under a zoning ordinance. Other intervenors sought to enjoin the operation of Crain's home as a nuisance, and the chancellor denied the injunction. The zoning ordinance permitted in a residential district a hospital and a boarding house. The appellant received in her home patients referred to her by doctors, who visited the patients from time to time. Most of them were infirm or ill, but not requiring hospitalization; others went there to recuperate. Crain furnished them room and board. She was a trained nurse, and also employed two or three practical nurses. All of them looked after the boarders. The court affirmed denial of the injunction, and held that Miss Crain's business was nearer that of

a hospital than a boarding house, both of which were permitted by the ordinance, and was not a nursing home. It pointed out that the name by which the business was called is not of controlling importance. The question is into what category it belongs under the facts. In the instant case, for example, Mrs. Daniels had her telephone listed in the telephone directory as "Day and Nite Nursery", and in the yellow pages advertised as "limited boarding, all ages" under the category "day nurseries". That designation also is not controlling, since we must look to the facts.

Furthermore, in Crain the court noted that "too strict an interpretation in respect of the application to an asserted prohibited use ought not to be given a zoning ordinance . . ." The same principle applies here, where the City of Gulfport's ordinance permits the taking of not more than six boarders by a resident family in a residential district, and makes no limitation on the ages of the boarders. Moreover, under the same ordinance residential districts may include apartment houses, clubs, hospitals or sanitoriums. Certainly these commercial types of business would be more objectionable than would be the limited boarding of not more than six children. We do not believe that the ordinance was intended to prohibit the boarding of children. In fact, its terms permit it.

In Simmons v. Pinsky, 185 Misc. 549, 58 N. Y. Supp. 2d 573 (1945), an establishment, which furnished board and lodging but did not accept transient guests, was held to be a boarding house within a zoning ordinance even though it could accomodate 100 guests. Its telephone listing was that of a "hotel". Yet it was said that this listing was not controlling; the facts determine the category of the business.

The burden of proof was on appellant City to establish that appellee was not operating a boarding house upon her premises. City of St. Louis v. Art Publication Society, 203 S. W. 2d 902, 905 (Mo. 1947). In the

cited case, the court, holding that the operation constituted a boarding house within the city zoning ordinance, pointed out that there were no other limitations expressed in the definition in the ordinance, and it would not imply any. See also 2 Yokley, Municipal Corporations (1957) Sec. 256; Anno., 124 A. L. R. 1011 (1940). In brief, appellee's use of her residence for the taking as boarders of not more than six children constitutes a use permissible under paragraph 4, Section 3 of Ordinance 611. The great weight of the evidence supports the chancellor's findings on this largely factual issue.

 Appellant argues in effect that Ordinance No. 850, enacted in 1953, which added a section to the 1940 general zoning ordinance, prohibits the operation of any type of child nursery in a residential district without a special, temporary permit, and appellee is operating nothing but a child nursery and has no such permit. No. 850 must be read *in pari materia* with general zoning Ordinance 611. It is designated as Section 28-A, and manifestly was designed to supplement Section 28 of the 1940 ordinance, which provided for temporary permits only for "quarries, gravel or sand pits, or for a nonconforming building." No. 850 does not purport in any way to amend or change Section 3 of the general ordinance, which permits the taking of not more than six boarders by a resident family in a residential district. Section 3 remains unchanged insofar as its terms are pertinent. Therefore, the question of whether appellee's operation comes within Section 3 is not affected by Ordinance No. 850. And we have held that appellee's business comes within the terms of Section 3.

Moreover, the establishment in No. 850 of a system of temporary permits for a "child nursery or kindergarten" apparently has reference to kindergartens and nursery schools "for the care, training, and education of preschool age children," as is defined with reference only to publicly supported institutions in Code of

1942, Section 6411-16. In other words, the special permit system created by Ordinance 850 is directed toward nursery or kindergarten schools operated on a day basis for instruction of preschool children. Mrs. Daniels' limited boarding business for children is not in that category. So far both of these reasons the 1953 amendment does not affect the conclusions reached above.

Affirmed.

*Roberds, P. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.