# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01500-COA

CHARLES THOMAS BOSTICK AND LARRY S. POE                              APPELLANTS

v.

DESOTO COUNTY, MISSISSIPPI, BY AND                                        APPELLEE
THROUGH ITS BOARD OF SUPERVISORS

DATE OF JUDGMENT:                 08/17/2015
TRIAL JUDGE:                      HON. MITCHELL M. LUNDY JR.
COURT FROM WHICH APPEALED:        DESOTO COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS:          WILLIAM P. MYERS
ATTORNEY FOR APPELLEE:            ROBERT E. QUIMBY
NATURE OF THE CASE:               CIVIL - REAL PROPERTY
TRIAL COURT DISPOSITION:          GRANTED APPELLEE'S MOTION FOR
                                  PERMANENT INJUNCTION
DISPOSITION:                      AFFIRMED - 05/09/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     Tom Bostick and Larry Poe own houses in a residential subdivision in DeSoto County. Bostick and Poe began offering their houses for short-term rent to transient guests on HomeAway.com and other websites. DeSoto County contends that such rentals are not a permitted use under applicable DeSoto County Zoning Regulations, which permit, as relevant in this case, "single family dwellings." The DeSoto County Chancery Court agreed and permanently enjoined Bostick and Poe from offering their houses as "vacation rentals" to short-term, transient renters. On appeal, Bostick and Poe argue that the chancery court

misinterpreted the applicable regulations.  However, we agree with the chancery court that such rentals are not a permitted use.  Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Bostick owns a house in Blue Lake Springs, a residential subdivision in Lake Cormorant, an unincorporated community in DeSoto County.  Bostick once lived in the house, but he now resides near Auburn, Alabama.  After he moved, Bostick began offering the house for rent on HomeAway.com, with a two-night minimum stay.  Bostick's online listing touts the house's proximity to Graceland, Beale Street, Tunica, and the University of Mississippi.  Online reviews for the house indicate that he has rented it for, among other purposes, family gatherings, vacations, "guys" and "girls" weekends, a "bachelorette gathering," and as a place for out-of-state wedding guests to stay.

¶3.     Poe owns three houses in Blue Lake Springs.  He has offered the houses for short-term rent on Craigslist, HomeAway.com, and other websites.  Neighbors have complained about raucous parties, loud music, and out-of-state vehicles coming and going at the houses.

¶4.     In December 2014, the County filed an application in the DeSoto County Chancery Court for a temporary restraining order, preliminary injunction, and permanent injunction to "halt the short-term rental" of Bostick's home.[1]  The County alleged that the property was

_____

[1] The County originally named Stanley Rojeski as the defendant.  Rojeski admitted that he was the record owner of the property but argued that he was not a proper defendant because he had sold the property to Bostick pursuant to an owner-financed purchase agreement.  However, Rojeski's obligation to convey title was conditioned on Bostick making full payment under the agreement, which was not scheduled to occur until October 2025.  While this case was pending in the chancery court, Rojeski executed a warranty deed

2

"not [being] used as any person's residence but [was] rather being continually rented on a 2 to 3 night basis." The County further alleged that such use of the property violated the applicable county zoning regulations for property zoned "A-R Overlay." The County filed a similar application to enjoin Poe from renting his houses on a short-term basis.

¶5. On January 30, 2015, a hearing was held in the Bostick case. Following the hearing, the chancery court entered an order preliminarily enjoining Bostick from renting the house "to transient guests for compensation." Bostick and Poe are represented by the same counsel, and the court subsequently entered an agreed order consolidating the Bostick and Poe cases.

¶6. The consolidated cases proceeded to a final hearing on June 4, 2015. Benny Hopkins, the director of planning for DeSoto County, and Jeremy Sartain, a longtime resident of Blue Lake Springs, testified in the County's case-in-chief. Shelley Johnston, a certified planner and planning consultant, testified for Bostick and Poe.[2]

¶7. Sartain testified that neighbors were concerned about parties at the subject properties with "loud music" and numerous vehicles with out-of-state license plates. He testified that during a recent weekend, "15 to 20 motorcycles [were] parked in the driveway" of one of the houses and "loud music" was playing. "All weekend," "all you heard was the motorcycles rip[-]roaring through the neighborhood." The motorcycles all had out-of-state tags, and no

---

in favor of Bostick, and the parties agreed that Rojeski should be dismissed and Bostick substituted as the defendant.

[2] Hopkins's and Johnston's testimony largely consisted of advocacy and defense of the parties' respective interpretations of the zoning regulations.

3

one knew why they were there. Sartain and others were afraid to allow their children to ride bikes or play outside. Another weekend, Poe rented a house to University of Memphis students for a party. Poe told Sartain that he knew that the students had a "stripper" at the party—or, if not a stripper, "a female [who] was not dressed appropriately."

¶8. The chancery court subsequently ruled "that a permanent injunction [was] justified," finding as follows:

> Single family dwellings permitted in the AR zone are dwellings designed or used as a residence, and they do not include a room in a hotel which is open to transient guests. It is not the intention of the DeSoto County Zoning Regulations to allow so-called vacation rentals in a residential subdivision.

Therefore, the court "permanently enjoined" Bostick and Poe "from renting their homes as so-called vacation rentals." Bostick and Poe filed a timely motion for a new trial, which was denied, and a timely notice of appeal. On appeal, they argue that the DeSoto County Zoning Regulations do not prohibit the rental of a "single family dwelling" to "transient guests" on a "short-term basis."[3]

## DISCUSSION

---

[3] In their reply brief, Bostick and Poe argue that the zoning regulations are unconstitutionally vague if interpreted to prohibit short-term rentals to transient guests. The issue was not raised in the trial court or in Bostick's/Poe's principal brief on appeal. Accordingly, the issue is waived. *See, e.g.*, *Paw Paw Island Land Co. v. Issaquena & Warren Ctys. Land Co.*, 51 So. 3d 916, 928 (¶49) (Miss. 2010) ("As it is improper to raise new arguments in a reply brief, the Court is under no obligation or duty to consider such argument."); *City of Hattiesburg v. Precision Constr. LLC*, 192 So. 3d 1089, 1093 (¶18) (Miss. Ct. App. 2016) ("[A] question not raised in the trial court will not be considered on appeal. Moreover, it is not sufficient to simply mention or 'discuss' an issue at a hearing. . . . [A] trial judge cannot be put in error on a matter which was never *presented to him for decision*." (citation, quotation marks omitted)).

¶9.     "The findings of a chancellor will not be disturbed on review unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard. . . .  However, for questions of law, the standard of review is de novo." *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000).  There are no significant or material facts in dispute in this case.  Rather, the appeal turns on the proper interpretation of applicable zoning regulations, an issue of law.  Therefore, we review the chancery court's decision de novo.

¶10.    "Zoning ordinances should be given a fair and reasonable construction, in the light of their terminology, the objects sought to be obtained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the zoning ordinance as a whole." *City of Gulfport v. Daniels*, 231 Miss. 599, 604-05, 97 So. 2d 218, 220 (1957).  "The cardinal rule in construction of zoning ordinances is to give effect to the intent of the lawmaking body." *Columbus & Greenville Ry. Co. v. Scales*, 578 So. 2d 275, 279 (Miss. 1991).  "[The Supreme] Court has held that, 'in construing a zoning ordinance, unless manifestly unreasonable, great weight should be given to the construction placed upon the words by the local authorities.'" *Hall v. City of Ridgeland*, 37 So. 3d 25, 40 (¶50) (Miss. 2010) (quoting *Scales*, 578 So. 2d at 279).

¶11.    Under the DeSoto County Zoning Regulations, the houses at issue in this appeal are in a "Residential Overlay District" referred to as "A-R Overlay."  As relevant in this case, permitted uses in the A-R Overlay District are the same "[u]ses permitted in the underlying base zone district," which is "A-R"—the "Agricultural-Residential District."  "Permitted

Uses" in the A-R District include, as relevant in this appeal, "[s]ingle family dwellings."[4]

The issue in this appeal is essentially whether a "single family dwelling" may be continually rented to a succession of transient guests on a short-term basis and yet retain its character as a single family dwelling.

¶12.    Article II of the DeSoto County Zoning Regulations provides definitions for a number of terms that are potentially relevant to this issue:

24.    **DWELLING:** Any building or portion thereof designed or used as the residence of one (1) or more persons, but not including a tent, cabin, travel trailer, or a room in a hotel, motel or boarding house.

25.    **DWELLING, SINGLE FAMILY ATTACHED:** A dwelling designed for and occupied by not more than one family having a wall in common with one other dwelling unit but located on a separate lot.

26.    **DWELLING, SINGLE FAMILY DETACHED:** A dwelling designed for and occupied by not more than one family which does not have any roof wall or floor in common with any other dwelling unit.

. . . .

31.    **FAMILY:** One or more individuals occupying a dwelling unit and living as a single household unit but not exceeding four unrelated persons.

. . . .

47.    **HOTEL:** A building in which overnight lodging is provided and offered to the public for compensation, and which is open to transient guests, in contradistinction, to a boarding house or lodging house as

---

[4] Other permitted uses include certain agricultural activities, churches, country clubs, public schools, and certain other listed uses. According to the regulation's statement of purpose, "[t]he 'A-R' District is intended to encourage very low-density residential uses in an agricultural setting in the outlying parts of the County's zoning jurisdiction."

herein defined.

. . . .

**83.    ROOMING HOUSE [*or* BOARDING HOUSE *or* LODGING HOUSE[5]]:** A building or place where lodging is provided (or which is equipped regularly to provide lodging by pre-arrangement for definite periods), for compensation, for five or more, but not exceeding 12 individuals, not open to transient guests, in contradistinction to hotels open to transients including group houses and halfway houses.

¶13.    In this case, the County has focused on the general definition of "dwelling," arguing that transient, short-term renters do not use the houses as a "residence," as contemplated by the definition.  The County also argues that the houses have been put to a "hotel-like use," which excludes them from the definition.  The County concludes that because such use of the houses is contrary to the definition of "dwelling," it is also contrary to their permitted use as "single family dwellings."

¶14.    The dissent disagrees with the County's interpretation of the definition.  The dissent emphasizes that a "dwelling" is defined in part as a "building or portion thereof designed *or* used as the residence of one (1) or more persons" (emphasis added).  The dissent reasons that a house is a dwelling if it is "designed" as a residence even if it is not "used" as such, and the houses at issue clearly were *designed* to be residences; therefore, they are dwellings.  The dissent also rejects the County's argument that the houses are no longer dwellings because Bostick and Poe are using them like hotels.  The dissent emphasizes that only "*a room in a hotel*" (emphasis added) is excluded from the definition of dwelling.

[5] "Boarding house" and "lodging house" are defined: "Same as [r]ooming house."

7

¶15.    As stated, the relevant regulations must be interpreted fairly and reasonably in a manner consistent with the purpose and structure of the DeSoto County Zoning Regulations as a whole, *Daniels*, 231 Miss. at 604-05, 97 So. 2d at 220, and, "unless manifestly unreasonable," we will give "great weight . . . to the construction placed upon the words by the local authorities." *Hall*, 37 So. 3d at 40 (¶50) (quoting *Scales*, 578 So. 2d at 279).  In this case, we cannot say that DeSoto County's interpretation of the definition of a dwelling is manifestly unreasonable.  We accept the dissent's point that a house may be a dwelling as long as it is "designed" as a "residence," even if it is not "used" as such.  Even so, the County reasonably determined that these houses were being used as "hotels," as that term is defined in the regulations, and that such use excludes them from the definition of a dwelling.  As noted above, a "hotel" is defined to include a "building in which overnight lodging is provided and offered to the public for compensation, and which is open to transient guests." As used by Bostick and Poe, the houses at issue meet this definition: they are offered for rent on public websites, and they are marketed and "open to transient guests."[6]  Thus, although the houses lack some common, recognizable features of most hotels, the County reasonably concluded that they are being used as hotels, as the term is defined in the applicable regulations.  Furthermore, given that the definition of a dwelling specifically excludes "a

---

[6] *See Black's Law Dictionary* 1637 (Bryan A. Garner ed., 9th ed. 2009) ("Transient": adj.: "Temporary; impermanent; passing away after a short time."  n.: "A person or thing whose presence is temporary or fleeting."); *American Heritage Dictionary of the English Language* 1901 (3d ed. 1992) ("Transient": adj.: "Remaining in a place only a brief time: *transient laborers*."  n.:  "One that is transient, especially a hotel guest or boarder who stays for only a brief time.").

room in a hotel," it is not manifestly unreasonable for the County to apply the exclusion to a property being used as a hotel.

¶16.     The foregoing is a sufficient basis to affirm the judgment and injunction entered by the chancery court.    However, the DeSoto County Zoning Regulations' more specific definition of a "single family dwelling" provides additional support for the injunction.   The County has not relied on this more specific definition[7] even though the relevant permitted use in this case is, specifically, "[s]ingle family dwellings."  However, based on the longstanding rule of statutory interpretation that a specific provision controls over a more general provision,[8] the more specific definition cannot be ignored.[9]

¶17.     As noted above, the zoning regulations define a "single family dwelling"—whether "attached" or "detached"—as "[a] dwelling designed for *and occupied* by not more than one family . . . ." (Emphasis added).  Regardless of whether any particular group that rented from

[7] The definition of "single family dwelling" was addressed briefly in testimony in the chancery court, although it was not the basis of the County's argument in that court either. The County has indicated that it is not seeking an injunction based on the definition of a "family."   The County's position is that short-term rentals to transient guests are not a permitted use, regardless of whether the renters are a nuclear family, a group of college students, or any other group.  The discussion in the text is not based on the definition of "family" and applies equally to all short-term rentals to transient guests.

[8] *See, e.g.*, *Yarbrough v. Camphor*, 645 So. 2d 867, 872 (Miss. 1994); *Lincoln Cty. v. Entrican*, 230 So. 2d 801, 804 (Miss. 1970); *McCaffrey's Food Mkt. Inc. v. Miss. Milk Comm'n*, 227 So. 2d 459, 463 (Miss. 1969).

[9] *Cf. Garrett Enters. Consol. Inc. v. Allen Utils. LLC*, 176 So. 3d 800, 803 (¶8) (Miss. Ct. App. 2015) (holding that the Court was bound to consider a contract provision that was "plainly relevant to the central issue of contract interpretation raised [on] appeal" despite the parties' failure to cite or discuss the provision).

Bostick or Poe met the definition of a "family" (*see supra* n.7), the transient nature of the rentals resulted in the houses being "occupied by . . . more than one family," a non-permitted use under the applicable zoning regulations. Bostick and Poe rented their houses for occupancies by a *succession* of short-term, transient renters. We conclude that this was inconsistent with the definition of a "single family dwelling."

¶18. Finally, we note that a "bed and breakfast home" is a "conditional use" in the A-R District. Unlike a "permitted use," a "conditional use" "may be permitted" only if it is first "approved by the [DeSoto County] Board of Adjustment." The Board must investigate and hold a public hearing on any application for a conditional use permit, and the Board will approve the application only if it finds "that the county would benefit from the proposed use and the surrounding area would not be adversely affected." A "bed and breakfast home" is also subject to a minimum lot size of 1.5 acres, off-street parking requirements, and approval by the DeSoto County Health Department. Also, "[g]uest activities" at a bed and breakfast "shall be in keeping with the normal activities of an overnight visiting guest." Thus, if Bostick or Poe wanted to operate a "bed and breakfast" in any of the subject houses, they would have to meet all of these conditions, and even then the Board of Adjustment would have discretion to deny approval if, after a public hearing, the Board determined that such use would negatively affect the neighborhood. We doubt that the County intended to place such significant preconditions to the operation of a "bed and breakfast" and yet, in the same zoning district, intended to allow an unlimited succession of short-term rentals to transient

10

guests, without any preconditions, preapproval, or other requirements.

## CONCLUSION

¶19.   In summary, we agree with the chancery court that short-term rentals to transient guests are not a permitted use under the applicable DeSoto County Zoning Regulations. Therefore, we affirm the judgment and permanent injunction entered by the chancery court enjoining Bostick and Poe "from renting their homes as so-called vacation rentals."

¶20.   **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J.**

**BARNES, J., DISSENTING:**

¶21.   I respectfully dissent. The DeSoto County zoning regulations do not prohibit the rental of properties in the A-R zone. The County's classification of the use of Bostick's and Poe's properties as a "hotel" is manifestly unreasonable, and the chancery court's injunction prohibiting "vacation rentals" is without foundation in the regulations.

¶22.   The pertinent permitted use for this A-R zone is a "single family dwelling." Neither the County nor the chancery court relies on the definition of "family" in limiting the use of the properties; the chancery court's injunction does not allow "vacation rentals," regardless of the relationship among the renters. The County contends it would be a violation of the regulations whether the rental was to "a family of four or eight university students."

11

Accordingly, we look to other definitions in the regulations to determine permitted use.

¶23. A "dwelling" is defined as "[a]ny building or portion thereof designed or used as the residence of one (1) or more persons, but not including a tent, cabin, trailer, or a room in a hotel, motel or boarding house." A hotel is defined as "[a] building in which overnight lodging is provided and offered to the public for compensation, and which is open to transient guests, in contradistinction, to a boarding house or lodging house as herein defined." The term "transient" or "transient guest" is never defined.

¶24. Nothing in the chancery court's injunction indicates what length of rental would be allowed under the regulations. The only length of time mentioned in the regulations is in a "definition within a definition." The term "family" is defined as "[o]ne or more individuals occupying a *dwelling unit* and living as a single household unit but not exceeding four unrelated persons." (Emphasis added). In turn, "dwelling unit" is defined as: "One room or rooms connected together, constituting a separate, independent housekeeping establishment for owner occupancy *or rental or lease on a weekly, monthly, or longer basis*[.]" (Emphasis added). Thus, under the zoning regulations, properties in the A-R zone can be rented on a weekly basis. Weekly rentals, then, cannot be considered "transient."

¶25. The parties, however, contend that the length of tenancy is not the issue. DeSoto County maintains that the issue is the nature of the rental, arguing that "[t]he length of time one rents the subject property does not matter; the A[-]R zone does not allow for the renting of properties to transients for profit." The Appellants likewise assert that "the length of the

12

stay has no bearing on the character of the use," and "[t]here is no provision in the DeSoto County ordinance to suggest otherwise." Neither party seems to realize the term "transient" is directly related to a duration or period of time. Nor do they rely on the periods of time specified in the definition of "dwelling unit." Both appear to want an "all or nothing" ruling. Do the regulations prohibit this type of rental or do they not? I conclude that they do not.

¶26. While our courts have not previously addressed this precise issue, there is authority from other jurisdictions that the "mere temporary or short-term use of a residence does not preclude that use from being 'residential.'" *Houston v. Wilson Mesa Ranch Homeowners Ass'n Inc.*, 360 P.3d 255, 259 (¶19) (Colo. App. 2015). The Utah Court of Appeals has held:

> [W]e must construe existing zoning ordinances strictly against the city . . . [and] conclude that short-term leases of residential properties are not prohibited by the zoning ordinance. . . Although we recognize that short-term leases *may* disrupt the residential environment of a neighborhood in some instances, by failing to prohibit short-term leases, Sandy City has implicitly determined that such practices are conducive to a residential environment. In other words, "we will not find a violation of law simply because [the permitted use may appear] inconsistent with the general intent statement . . . when the use is in compliance with the substantive provisions of the ordinance."

*Brown v. Sandy City Bd. of Adjustment*, 957 P.2d 207, 212 (Utah Ct. App. 1998) (internal citations omitted); *see also Heef Realty & Investments LLP v. City of Cedarburg Bd. of Appeals*, 861 N.W.2d 797, 801 (Wis. Ct. App. 2015) ("[T]ime/occupancy restrictions or requirements that are not in the zoning scheme" cannot be imposed.)

¶27. In a recent case, *Shvekh v. Zoning Hearing Board of Stroud Township*, 154 A.3d 408 (Pa. Commw. Ct. 2017), the Commonwealth Court of Pennsylvania considered a factually

13

analogous situation. Irina Shvekh owned a three-acre, single-family home that she advertised on various vacation-rental websites for "events, birthdays, weddings." *Id*. at 410. The local zoning board determined that Shvekh's rental of her home violated the zoning ordinance because it constituted an expressly prohibited use as a "tourist home," and determined that the "short-term transient rentals [were] more typical of a hotel or tourist home, where vacationers or travelers would not be considered to be maintaining a residence in the ordinary meaning of the phrase." *Id*. at 411. The appellate court, however, held that while deference should be given to a "[a] zoning board's interpretation of its own zoning ordinance[,] . . . a municipality cannot advance a new and strained interpretation of its zoning ordinance in order to effect what it would like the ordinance to say without an amendment." *Id*. at 414 (citations omitted).

¶28.    The zoning ordinance in *Shvekh* defined a "dwelling" as "[a]ny building or portion thereof, designed or used exclusively as the residence for one or more persons." *Id*. at 412. The appellate court found there was "no question that the [p]roperty [was] 'designed for' one family," commenting on the fact that the definition has "two alternatives" for meeting the definition of a "single family dwelling." *Id*. at 414. It concluded:

> [Vacation-rental sites have] expanded the possible uses of a single-family dwelling, and the Township can address these new uses in the Zoning Ordinance. However, amendments cannot be effected by shoe-horning a use that involves renting an entire single-family home to vacationers into the definition of "tourist home." The Property meets the definition of single-family residence because it has been "*designed for or* occupied exclusively for one family." Zoning Ordinance, Article II, § 2.266(a) (emphasis added); R.R. 224a. The vacation rental of the entire home bears no relation to the bedroom-

14

by-bedroom rental that is the hallmark of a tourist home[.]

*Id*. at 415.

¶29.    The DeSoto County's zoning regulations similarly define a "dwelling" as "[a]ny building or portion thereof designed *or* used as the residence of one (1) or more persons, but not including a tent, cabin, travel trailer, or a room in a hotel, motel or boarding house." (Emphasis added).  The use of the disjunctive in the definition indicates that the dwelling may *either* be designed as a residence *or* used as a residence; it does not have to be both. There is no question that the Appellants' properties were *designed* as residences.

¶30.    Moreover, the definition of a "dwelling" in the DeSoto County zoning regulations merely excludes using the property as "*a* room in a hotel, motel or boarding house."  The Appellants are renting the entire premises; they are not renting the property room by room. As the rental of the entire house bore "no relation to the bedroom-by-bedroom rental that is the hallmark of a tourist home" in *Shvekh,* the rental of the entire house in the instant case bears no relation to the room-by-room rental that is the hallmark of a hotel.  As the majority observes, the properties "lack some common, recognizable features of most hotels."  There is nothing to suggest the Appellants' homes were open to the public at large (e.g., no "vacancy" sign); the renters have to make advance reservations.  *See Fruchter v. Zoning Bd. of Appeals of Town of Hurley,* 133 A.D. 3d 1174, 1176 (N.Y. App. Div. 2015) (concluding the petitioner's rental of property did not fall under the definition of a hotel or bed-and-breakfast, noting the rental of entire property and lack of any "common exterior entrance");

15

*Atkinson v. Wilt*, 94 A.D.3d 1218 1220 (N.Y. App. Div. 2012) (holding the homeowner's advertising of his property on a vacation-rental website did not "transform[] the premises from a single-family residence into a tourist accommodation").  As the Appellants observe:

> The properties owned by Bostick and Poe are unmistakable as single family residences.  They are not hotels and were never constructed to be hotels. . . . [T]he property is still a house, no matter whether the tenant stays for a weekend or longer.  There is no provision in the DeSoto County ordinance to suggest otherwise.

¶31.    The majority finds that DeSoto County's application of the exclusion to the property from being used as a hotel was not "manifestly unreasonable."  I disagree.  Although deference must be afforded to DeSoto County's construction of its zoning regulations, as in *Shvekh*, I find that DeSoto County is advancing a "new and strained interpretation" of its zoning regulations to restrict the Appellants' use of their respective properties.  A "[l]iberal construction does not mean strained construction, and a court cannot distort the plain meaning of a zoning ordinance in order more fully to effectuate its purpose."  *See* 8 Eugene McQuillan, *Municipal Corporations* § 25.73 at 232 (3d ed. 2000).  Vacation rentals are not prohibited by the zoning regulations.

¶32.    I would  reverse and render the judgment, set aside the chancery court's permanent injunction, and remand for further proceedings regarding Bostick's claim for damages and the Appellants' claim for attorney's fees.

    **LEE, C.J., JOINS THIS OPINION.**

16