MAXWELL, JUSTICE, FOR THE COURT:
¶ 1. “ ‘[I]n construing a zioning ordinance, unless manifestly unreasonable, great weight should be given to the construction placed upon the words by the local authorities.’ ”[1] And if the ordinance’s application is “fairly debatable,” the decision of the Board of Supervisors must be affirmed.[2] Here, the Madison County Board of - Supervisors (the; Board) found Arlin George - Hatfield, III—who raised “chickens, guineafowl, and ducks”—violated a Madison County Zoning Ordinance (the Ordinance) section, which did not expressly permit raising and keeping fowl in residential neighborhoods. The Board’s decision was consistent with an earlier interpretation and application of the Ordinance section.
¶ 2. After review, based on the Board’s prior treatment of a similar matter and its construction of the applicable zoning law, we find the Board’s decision was neither arbitrary nor capricious. And the interpretation was certainly not “manifestly unreasonable.” This Court also finds that, in light of the entire Ordinance, Hatfield had sufficient notice that keeping or raising fowl on residential property was prohibited. We therefore affirm the Madison County Circuit Court’s ruling, which affirmed the Board’s interpretation and decision.
Background Facts and Procedural History
¶ 3. In July 2012, Hatfield purchased Lot 1 in Phase 1 of Deer Haven subdivision in Madison, Mississippi. At some point after purchasing the lot, Hatfield began raising chickens, guineafowl, and ducks on the property.
¶4. According to Hatfield, in October 2013, he was sued by the Deer Haven Owners Association (DHOA).[3] The claim *20 stemmed from his supposed violation of subdivision covenants that prohibited keeping or raising fowl[4] and constructing structures—such as pens and coops—without DHOA approval. Hatfield alleges that while this lawsuit was pending, DHOA contacted and involved Scott Weeks, an administrator with the Madison County Planning and Zoning Department. Weeks inspected Hatfield’s property on February 18, 2015, and found Hatfield was violating the “R-l Residential District” section of the Madison County Zoning Ordinance. The violation was based on Hatfield “keeping or raising poultry,” which is neither a permitted nor a conditional use under R-l zoning. Weeks followed up his inspection with a letter, dated March 13, 2015. The letter detailed the violation and advised Hatfield to remove the “chickens, guinea-fowl, and ducks.”
¶ 5. Weeks inspected Hatfield’s property twice more. His April 1 and April 13 visits revealed Hatfield had not removed the fowl. Again, Weeks sent a followup letter, this one dated April 13, 2015. The letter explained that, because Hatfield had failed to correct the violation, the matter would be presented to the Madison County Board of Supervisors (the Board).
¶6. On June 1, 2015, the Board heard presentations and recommendations from Weeks, County Attorney Mike Espy, Hatfield’s counsel, and DHOA’s lawyer. After considering the arguments, the Board voted unanimously to accept Weeks’s and E spy’s findings and recommendations. The Board found Hatfield had violated R-l zoning by keeping or raising around sixty “ducks, geese and other fowl” on his Deer Haven lot. The Board found these acts were neither a permitted nor a conditional use under R-l zoning. The Board also denied Hatfield’s request to continue to keep or raise fowl on the property.
¶ 7. Hatfield filed a Notice of Appeal and Intent to File Bill of Exceptions on June 10, 2015. He filed his Bill of Exceptions on August 19, 2015. In it, he argued the Board’s decision was arbitrary and capricious, not supported by substantial evidence, and was based on an unconstitutionally vague Ordinance section. The Board responded through its counsel, insisting its decision was not arbitrary or capricious. The Board urged its decision mirrored a previous similar ruling in another matter— that keeping or raising fowl was not a permitted or conditional use under R-l zoning. And the Ordinance section dealing with R-l zoning clearly listed the permitted uses, particularly when viewed in light of other sections. Sitting as an appellate court, the circuit judge found the Board’s decision was “fairly debatable,” supported by substantial evidence, and not arbitrary or capricious.
¶ 8. Hatfield now appeals to this Court. He argues: (1) the Board’s decision was arbitrary, capricious, and unsupported by substantial evidence, and (2) Section 601 of the Madison County Zoning Ordinance is unconstitutionally vague and therefore void.
Discussion
¶ 9. Zoning issues are “legislative in nature.” Thomas v. Bd. of Supervisors of Panola Cty., 45 So.3d 1173, 1180 (Miss. 2010) (citing Luter v. Hammon, 529 So.2d 625, 628 (Miss. 1988)). And “[z]oning ordinances should be given a fair and reasonable construction, in the light of their terminology, the objects sought to be obtained, the natural import of the words used in common and accepted usage, the *21 setting in which they are employed, and the general structure of the zoning ordinance as a whole.” City of Gulfport v. Daniels, 231 Miss. 599, 604-05, 97 So.2d 218, 220 (1957). A key function of a county board, city council, or board of aldermen is to interpret its zoning ordinances. And “[t]he cardinal rule in construction of- zoning ordinances is to give effect to the intent of the lawmaking body.” Columbus & Greenville Ry. Co. v. Scales, 578 So.2d 275, 279 (Miss. 1991) (citations omitted). Local boards are in the most, advantageous position to interpret and apply local ordinances. That is why “[i]n construing a zoning ordinance ... great weight should be given to the construction placed upon the words by the local authorities.” Id. (citations omitted). But our courts are certainly not bound by a board’s interpretation of a local ordinance if it is “manifestly unreasonable.” Id. And we will reverse in such instances. . .
¶ 10. As to the ordinance’s application, this Court will affirm a board’s zoning decision unless it is clearly “arbitrary, capricious, discriminatory, illegal, or without [a] substantial evidentiary basis.” Drews v. City of Hattiesburg, 904 So.2d 138. 140 (Miss. 2005) (citing Perez v. Garden Isle Cmty. Ass’n, 882 So.2d 217, 219 (Miss. 2004); Carpenter v. City of Petal, 699 So.2d 928, 932 (Miss. 1997)). If aboard’s zoning decision is “fairly debatable!,]” we will not reverse it. Id.
¶ 11. Justice Coleman recognizes this Court’s precedent but advocates we change the law and pursue a new approach. What he prefers is a purely de novo review, giving absolutely no deference to interpretations by local governing boards. We disagree with the wisdom of this suggestion. We also see no constitutional infirmity in our present law.
¶ 12. The first problem with this suggested change is that it overlooks the practical reality that, to resolve zoning issues, local governing boards must interpret ordinances to apply them. If we were to accept this logic to its ultimate conclusion, local boards would have to stop and run to the courthouse for guidance every time an ordinance-interpretation question arises.[5]
. ¶ 13. Second, Mississippi’s law does not run afoul of Sections 1 and 2 of our Constitution. The Board is not overstepping its bounds into the judiciary’s role by interpreting local ordinances. The Board is simply acting within its own established role as creator and enforcer of local law. Similarly, by giving deference to a local board’s interpretation, we are not ceding our judicial power. In the cases that have applied a deferential standard of review, this Court has never suggested we lack authority to reverse a board’s decision. Instead, what we have recognized is the obvious—that a local board is in the best position to interpret its own local ordinances. Thus, by giving great weight to the Board’s interpretation, we ensure we stick to our constitutional role as the judiciary. And we restrain our branch from becoming a super-municipal board—a role that would certainly usurp the powers of the local governing body.
I. The Board’s Decision
¶ 14. With this standard in mind, the Ordinance clearly defines the permitted uses for each of the two relevant sections—A-l zoning under Section 501 and R-l zoning under Section 601. A-l zoning *22 covers “Agricultural Districts,” while R-l zoning applies to “Residential Estate Districts.”

A.. Agricultural Districts

¶ 15. Article V, Section 501, of the Ordinance defines the . “LAND USES PER; MITTED” for A-l zoning. Section 501(F) permits A-l, zoned land to be used for “Breeding, raising, and feeding of livestock (i.e. horses, cattle, sheep, goats, mules, pigs, etc.), provided that each such animal hérein defined as ‘livestock’ shall be kept on a tract of land or lot of one (1) acre or land or greater.” And subsection (G) permits the “Breeding, raising and feeding of chickens, ducks, turkeys, geese, or other fowl!.]” '
¶ 16. So in Agricultural Districts, breeding, raising, and feeding fowl is an expressly permitted use,

B. Residential Estate Districts

¶ 17. The problem Hatfield-faces is that he lives in Deer Haven subdivision—which is not' zoned as an Agricultural District. Thus, the permitted uses under A-l zoning do not apply to his neighborhood. Instead, Deer Haven subdivision is zoned as a Residential Estate District. Thus, it is subject to the express permitted uses allowed under R-l zoning.
¶ 18. Article VI, Section 601 defines the “LAND USES PERMITTED” for R-l zoning. Section 601(D) states:
Breeding, raising, and feeding of grazing livestock (i.e. horses, cattle, sheep, goats’, mules, etc.), provided that each such animal herein defined as “grazing livestock” shall be kept on a tract of land or • lot of one (1) acre of land or greater. Barns, pens, corrals, and other buildings or enclosures for the keeping of livestock are permitted accessory uses, provided that such buildings or-enclosures (excluding open pastures) are located no closer than 50 feet from any adjoining property lines or existing street right-of-way line. ■ „
But unlike A-l zoning, R-l does not include breeding, raising, and feeding chickens, ducks, or other fowl as a permitted use.[6]
¶ 19. The Board noted this obvious distinction and found Hatfield was in violation of Section 601, since keeping or raising fowl is not listed as a permitted use in R-l zoned areas like Deer Haven subdivision.
¶ 20. In construing R-l zoning’s permitted uses, the Board concluded “livestock” and “grazing livestock” did not include fowl. Hatfield claims this decision was arbitrary and capricious. As support, Hatfield points to deposition testimony .from the separate DHOA lawsuit. In that action, Weeks supposedly testified that he was uncertain what the phrase “grazing livestock” encompasses. Hatfield couples this deposition testimony—which is not a part of this record—with the Ordinance’s lack of exclusive definitions for “livestock” or “grazing livestock.”[7] We find this interpretation is not “manifestly unreasonable.” .
*23 ¶ 21. In applying an ordinance, an arbitrary decision is one “not done according to reason or judgment, but depending on the will alone.” Thomas, 45 So.3d at 1181 (quoting Gentry v. City of Baldwyn, 821 So.2d 870, 873 (Miss. Ct. App. 2002)). A capricious decision is one “implying either a lack of understanding of or a disregard for the surrounding facts and controlling principles.” Id.
¶22. We find the Board’s decision to deny Hatfield’s request to continue keeping or raising fowl was not arbitrary, especially when viewed in light of Section 501. Weeks’s testimony in the DHOA lawsuit is not properly a part of this record. Nor does Hatfield provide authority to show Weeks’s interpretations of the Ordinance, in his DHOA lawsuit deposition, are binding. And the Board noted that, in addition to livestock, A-l zoned land expressly lists keeping or raising fowl as a separate, specific permitted use. But R-l zoned land— like Deer Haven subdivision—does not. So the Board’s decision that “chickens, gui-neafowl, and ducks” were not permitted on Hatfield’s residential property was not based on its. mere will, but was reasoned.
¶ 23. Nor was the Board’s decision capricious. The Board considered its past actions in interpreting and applying Section 601, which were consistent with this decision. The minutes specifically reference a previous distinct matter, Nancy Field v. Madison County Board of Supervisors, Civil Act. No. CI-2014-0140. There, the Board took the same position on Section 601—that keeping or raising fowl was not permitted on R-l zoned land.
¶ 24. Still, even if this Court had some uncertainty with the Board’s decision, where the issue is “ ‘[fjairly debatable’ [it] is the antithesis of arbitrary and capricious.” Fondren N. Renaissance v. Mayor & City Council of the City of Jackson, 749 So.2d 974, 977 (Miss. 1999) (citing Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss. 1987)). And we find the Board’s decision is, at a minimum, fairly debatable.
¶25, We therefore find the Board’s decision was-supported by substantial evidence, was neither arbitrary nor capricious, and was unquestionably fairly debatable.[8]
II. Constitutionality of Section 601 '
¶26. Hatfield also insists that, by not exclusively defining “livestock” or “grazing livestock,” Section 601 could be interpreted to include poultry, fowl, and/or birds. Thus, he suggests, Section 601 is unconstitutionally vague and lacks “clear notice and sufficiently definite warning of. that which is prohibited.” Mayor & Bd. of Aldermen, City of Clinton v. Welch, 888 So.2d 416, 421 (Miss. 2004). We disagree.
¶ 27. Section 601 gives, the following examples, of permitted “livestock”—“(i.e. horses, cattle, sheep, goats, mules, etc.).” *24 But Hatfield says these examples are not enough. He argues that because “livestock” and “grazing livestock” are used interchangeably, and the parenthetical contains the phrase “et cetera,” Section 601 gives no clear notice of what is considered “livestock.” This position is unreasonable. The listed examples are obviously limited to large, four-legged, hoofed animals—not “chickens, ducks, turkeys, geese, or other fowl[.]” And there is no reasonable interpretation to the contrary.
¶ 28. Still, Hatfield argues the Board’s decision and application of Section 601 is analogous to the circumstances faced in Welch and Nichols v. City of Gulfport, 589 So.2d 1280 (Miss. 1991).
¶29. In Welch, the City of Clinton’s Building and Zoning Inspector gave property owners verbal permission to build a tree house in their front yard. Welch, 888 So.2d at 425. But after giving permission, the City backtracked and sought to enforce a prohibition against accessory structures and uses in front yards. Id. at 419-20. In the midst of that municipal squabble, the City altered certain definitions— omitting the terms “accessory building or use” and replacing them with “accessory structure or use.” This ultimately led to confusion over the vague, unclear, and before then, never-used definitions for a “detached structure” and “use” thereof. Id. So this Court found “accessory building or use” to be vague and unclear. Id. at 427-28. Furthermore, the City was equitably estopped from initially granting permission to build the tree house, then changing its interpretation midstream. Id. at 426-27.
¶ 30. In Nichols, this Court found a City of Gulfport noise ordinance unconstitutionally vague. We found the decision whether a particular noise was “ ‘unnecessary,’ ‘unusual,’ or ‘annoying* ” involved a subjective standard—something that depended entirely on the ears of each complainant. Nichols, 589 So.2d at 1284.
¶ 31. Both cases are easily distinguished from this one. The question here is far simpler: Are the terms “grazing livestock” and “livestock,” along with the express examples, sufficient to notify Hatfield that keeping or raising fowl on his property was prohibited? Based on the Ordinance’s listed examples and the differing permitted uses for Agricultural and Residential Districts, the answer is yes.
¶ 32. And Hatfield’s situation differs from Welch, as the Board has consistently interpreted its Ordinance, and Hatfield was never given permission to keep or raise fowl. Nor is it similar to Nichols, since the Ordinance’s definition of “livestock” or “grazing livestock” is not unique to each property owner, resulting in a purely subjective definition.
¶ 33. Also important is the requirement that this Court not read zoning ordinance sections in isolation. See City of Gulfport v. Daniels, 231 Miss. 599, 608, 97 So.2d 218, 222 (1957) (zoning ordinances must be read in pari materia). Here, Article V sections, which control Agricultural Districts, immediately precede the Article VI sections dealing with Residential Districts. And Article V, Section 501(G), lists as a specific permitted use the “[bjreeding, raising and feeding of chickens, ducks, turkeys, geese, or other fowl[.]” But this specific permitted use is notably absent from those uses found in Section 601 for Residential Estate Districts.
¶ 34. Not only do the listed examples make clear that “livestock” or “grazing livestock” does not include fowl, but the differing express permitted uses of the two districts—A-l and R-l—put Hatfield on notice that keeping or raising fowl was not allowed on R-l zoned land.
¶ 35. We find the Ordinance is sufficiently clear that keeping or raising fowl, while *25 expressly permitted in A-l zoned districts, is not permitted in R-l zoned districts. And the Board’s interpretation to this effect is not manifestly unreasonable.
Conclusion
¶ 36. The Board’s interpretation and decision, .finding that Hatfield violated Section 601 by keeping or raising fowl on his R-l zoned property, was reasonable and not arbitrary or capricious. Its decision was also, at a minimum, fairly debatable. Likewise, Section 601, when read in light of the entire Madison County Zoning Ordinance, gave Hatfield sufficient notice that keeping or raising fowl on his property was prohibited. We therefore affirm the circuit court’s decision.
¶ 37. AFFIRMED.
WALLER, C.J., RANDOLPH, P.J., KING, BEAM AND CHAMBERLIN, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KITCHENS, J.

. Hall v. City of Ridgeland, 37 So.3d 25, 40 (Miss. 2010) (quoting Columbus & Greenville Ry. Co. v. Scales, 578 So.2d 275, 279 (Miss. 1991)).

. Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss. 1987).

.DHOA’s lawsuit is not part of this record. Insteád, Hatfield reférences the DHOA lawsuit in his Bill of Exceptions, and in his "Optional Record Excerpts” on appeal, as “Civil Action. No. 2013-1076, Madison County Chancery Court.”

. The term "fowl” is used to refer collectively to “chickens, ducks, turkeys, geese, or other fowl ..as described in Article V, Section 501(G) of the Madison County Zoning Ordinance.

. The same logic would apply to any administrative agency .that interprets its own regulations. Under the dissent’s view, we must also give no deference to agency interpretations. This would require we overrule other established precedent. E.g., Equifax, Inc. v. Mississippi Dep't of Rev., 125 So.3d 36, 41 (Miss. 2013).

. Article VI, Section 602 defines the “CONDITIONAL USES AND STRUCTURES AS PROVIDED IN SECTION 2605” for R-l zoning. These conditional uses allow for expanded uses of R-l zoned land, subject to a conditional use permit. However, the keeping or raising of fowl is not a specified conditional use for R-l zoned land. And Hatfield makes . no argument on appeal to suggest otherwise.

. Hatfield provides voluminous "Optional Record Excerpts” that include documents not in the record before tins Court. Throughout his arguments, Hatfield continually refers to other depositions, litigation, transcripts, and other material not properly part of this appeal. Hatfield also asserts the Board’s June 1, 2015, minutes do not correspond with his court reporter’s transcript. Yet Hatfield provides no specific discrepancies between his *23 transcript and the Board’s minutes to show the Board “failed to adopt the recommendation of their Zoning Administrator or of their attorney.’’ So this argument is unsupported. Moreover, a Board can act only through its minutes. See Miss. Code Ann. § 19-3-27 (Rev. 2012); see also Butler v. Bd. of Supervisors for Hinds Cty., 659 So.2d 578 (Miss. 1995). And the record shows the Board’s signed minutes adopted the recommendations of Planning and Zoning Administrator Scott Weeks and County Attorney Mike Espy, who both asserted Hatfield was in violation of Section 601.

. Hatfield suggests the Board's decision lacks substantial support, though he does not contest that he was keeping or raising fowl on his property. What Hatfield disputes is the number of fowl, claiming it was twelve to fifteen, not sixty, So his complaint really deals more with the supposed arbitrariness and capri- . ciousness of the. Board’s decision, not a lack of substantial evidence supporting it.