# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CC-01349-COA

**DAVID HICKMAN, LORI ANN HICKMAN AND HICKMAN METAL RECYCLING, LLC**                                    **APPELLANTS**

**v.**

**CITY OF BILOXI**                                                                                            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/29/2019 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | DAVID NEIL HARRIS JR. |
| ATTORNEYS FOR APPELLEE: | TERE R. STEEL |
| | PETER C. ABIDE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 03/16/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, P.J., FOR THE COURT:**

¶1.     David and Lori Hickman own a property that is zoned agricultural but has been used for scrap metal recycling under a preexisting use exception to the City of Biloxi's zoning ordinance. In 2017, the City issued a notice of violation to the Hickmans, alleging that the exception had terminated because the preexisting nonconforming use had ceased for at least one year. After a public hearing, the City's Board of Zoning Adjustments found that the nonconforming use had ceased for at least one year, which terminated the preexisting use exception. The Hickmans appealed, and the circuit court affirmed the Board's decision. On

appeal, the Hickmans argue the Board's decision is arbitrary and lacks a substantial evidentiary basis. We find no error and affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. The Hickman family has owned the property at 12360 Hickman Road in Biloxi for many years. Beginning around 1968, David's father operated a scrap metal recycling business, which David later acquired. In 1999, the City annexed the area and zoned it agricultural. However, the Hickmans were able to continue their business, which was by then known as David Motor and Scrap Company ("David Motor"), under a preexisting-nonconforming-use exception to Biloxi's Land Development Ordinance (LDO).[1] The Hickmans operated their business on the property until 2012, when they sold the business to SMM Gulf Coast LLC.

¶3. The sale to SMM included a transfer of business assets from the Hickmans' recycling companies to SMM, an employment agreement between SMM and David Hickman, a non-compete agreement barring the Hickmans from engaging in the recycling business in Mississippi and three other states for a period of five years, and a lease of the subject property to SMM.[2] The lease agreement in the record is dated August 21, 2012, and provides for a six-month lease term expiring in February 2013. In 2014, the Hickmans initiated an

---

[1] The LDO permits nonconforming uses "that were lawfully established before [the LDO] was adopted or amended." LDO § 23-8(1)(A). However, "[i]f a nonconforming use ceases to operate or has been discontinued for a period of one year or longer, it shall not be reestablished and shall only be replaced with a conforming use." LDO § 23-8(2)(F).

[2] The asset purchase agreement, lease, and related documents in the record are not signed by SMM, but the City does not dispute that they reflect the terms of the sale.

arbitration proceeding against SMM, alleging that SMM had failed to make payments due under the parties' agreements. In July 2015, the arbitrator awarded damages to the Hickmans and also limited the scope of their non-compete agreement.

¶4. In January 2016, the Hickmans started a new recycling business under the name Hickman Metal Recycling. The new business's website stated, "In 2012, [David Hickman] had the opportunity to sell all [his] businesses to perhaps retire. But David just cannot stay away from the scrap business. In 2016, he reopened the Biloxi location under the name Hickman Metal Recycling." In a December 2015 post on Facebook, Lori Hickman stated, "David and I will be opening our scrap recycling facility called Hickman Metal Recycling on January 5 of the new year." And in a July 2017 article in the magazine *American Metal Market*, Lori stated, "We are trying to get our name out there and let people know that we have opened back up. Our regulars got used to going to other businesses, but they are coming back."

¶5. In June 2017, after their new business was up and running, the Hickmans applied to the Mississippi Department of Environmental Quality (MDEQ) for a permit to install an industrial metal shredder on the subject property. The Biloxi Community Development Department (CDD) initially advised the MDEQ that the Hickmans' use of the property for recycling was lawful. However, in July 2017, the CDD notified the MDEQ that it had "recently come to [the CDD's] attention that [the Hickmans' recycling business] ha[d] allegedly not been in operation for a least a year." In September 2017, the CDD issued a notice of violation to the Hickmans, informing them that "the non-conforming use of [the

3

subject property] was apparently discontinued for a period of longer than one year," which resulted in "the loss of non-conforming use status." The notice directed the Hickmans to cease the non-conforming use or request an enforcement conference.

¶6. The Hickmans requested and were granted a conference. In February 2018, CDD Director Jerry Creel issued a Final Determination of Violation in which he found that based on the evidence presented at the conference, he was "unable to confirm the continued operation of the authorized nonconforming use . . . during the time" between the sale to SMM in 2012 and the opening of Hickman Metal Recycling in 2016. Creel relied in part on the Hickmans' non-compete agreement with SMM and the Hickmans' own public comments in connection with the opening of Hickman Metal Recycling. Creel also considered the Hickmans' evidence that they had continued to obtain a privilege license from the City of Biloxi for David Motor every year, even after the sale to SMM. But Creel concluded that the licences "provided no proof that a business was actually conducted during the time period in question."

¶7. The Hickmans appealed the CDD's decision to the City's Board of Zoning Adjustments, which held a public hearing. The Board considered the evidence that Creel reviewed and additional evidence offered at the hearing. The Hickmans presented a copy of the July 2015 award in their arbitration against SMM; letters from customers stating that the Hickmans had been "storing" material for the customers; a bill of sale for a "car crusher" that David Hickman purchased in February 2012; a list of invoices showing customer payments to the Hickmans in July 2012; and bank statements showing that "Hickman Enterprises" had

4

an account with Regions Bank between March 2013 and July 2014. The CDD offered records from the Mississippi Secretary of State showing that David Motor had been dissolved since 2013 and that Hickman Metal Recycling was first registered in December 2015.

¶8. During the public hearing, various citizens spoke for and against the Hickmans' appeal. Some voiced general support for the Hickmans or raised noise or environmental concerns. Some citizens specifically stated that the Hickmans' business had ceased for more than a year, while others denied that it had ever ceased operations. David Hickman stated that the Hickmans had leased the property to SMM as part of the sale of their business and then took possession of the property again sometime after "the deal [with SMM] fell apart." David stated that sometime later they began accepting scrap for storage and had "plans to open back up," but they did not reopen immediately, apparently because of the ongoing litigation with SMM. He stated that after the arbitration ended in 2015, they "decided to open back up" and then reopened in 2016.

¶9. After considering the evidence and arguments presented by the Hickmans and the CDD, the Board voted 10–0 to affirm the CDD's decision. The Hickmans appealed, and the Harrison County Circuit Court affirmed the Board's decision. The Hickmans then appealed again. They argue that there is not substantial evidence to support the Board's decision and that the Board erred by relying "solely" on the Hickmans' sale of their business in 2012.

## DISCUSSION

¶10. Judicial review of a zoning order issued by a local board is "restricted" in scope. *Cleveland MHC LLC v. City of Richland*, 163 So. 3d 284, 286 (¶5) (Miss. 2015) (quoting

5

*Red Roof Inns Inc. v. City of Ridgeland*, 797 So. 2d 898, 900 (¶6) (Miss. 2001)). "[T]his Court will affirm a board's zoning decision unless it is clearly arbitrary, capricious, discriminatory, illegal, or without a substantial evidentiary basis. If a board's zoning decision is fairly debatable, we will not reverse it." *Hatfield v. Bd. of Supervisors of Madison Cnty.*, 235 So. 3d 18, 21 (¶10) (Miss. 2017) (citations, brackets, and quotation marks omitted).

¶11. "[A]n arbitrary decision is one not done according to reason or judgment, but depending on the will alone. A capricious decision is one implying either a lack of understanding of or a disregard for the surrounding facts and controlling principles." *Id.* at 223 (¶21) (citations and quotation marks omitted). "Substantial evidence" is "something less than a preponderance of the evidence but more than a scintilla or glimmer." *Thomas v. Bd. of Supervisors of Panola Cnty.*, 45 So. 3d 1173, 1181 (¶22) (Miss. 2010) (quoting *Miss. Dep't of Envtl. Quality v. Weems*, 653 So. 2d 266, 280-81 (Miss. 1995)). The role of a reviewing court is not to "reweigh the evidence" but only "to verify [that] substantial evidence exists." *Childs v. Hancock Cnty. Bd. of Supervisors*, 1 So. 3d 855, 861 (¶19) (Miss. 2009).

¶12. In the present case, the Board determined, by a 10–0 vote, that the Hickmans' right to a preexisting nonconforming use exception had terminated because the "nonconforming use cease[d] to operate or ha[d] been discontinued for a period of one year or longer." LDO § 23-8(2)(F). On appeal, the Hickmans argue that the Board's ruling was "arbitrary, capricious, discriminatory, illegal, [and] without a substantial evidentiary basis." More

6

specifically, they assert that the Board focused "solely on the change of ownership, tenancy, and or management of the subject property" and "ignored the substantial evidence demonstrating the Hickmans' legal nonconforming use had never ceased for more than one year."

¶13.   The Hickmans are correct "that the right to continue a nonconforming use is not a personal right but one that runs with the land." *Faircloth v. Lyles*, 592 So. 2d 941, 945 (Miss. 1991).  Therefore, "such right may not be terminated or destroyed by a change of ownership of the property." *Id.*; *accord Cleveland MHC*, 163 So. 3d at 288 n.3; *Heroman v. McDonald*, 885 So. 2d 67, 71 (¶6) (Miss. 2004).  Indeed, the Biloxi LDO specifically recognizes this legal principle.  *See* LDO § 23-8-1(F) ("The status of a nonconformity is not affected by changes of tenancy, ownership, or management.").  However, contrary to the Hickmans' allegations, the Board did not base its decision solely on the Hickmans' sale of their business or lease of the subject property.  Instead, the Board relied on substantial evidence in the record demonstrating that for at least one year between the sale to SMM in 2012 and the opening of Hickman Metal Recycling in early 2016, the subject property was not used to conduct scrap metal recycling.

¶14.   The Board was presented with substantial evidence that indicated that scrap metal recycling had ceased on the subject property.  Lori herself stated that upon opening in 2016, Hickman Metal Recycling needed to regain customers who "got used to going to other businesses."  In addition, the Hickmans allowed David Motor to be administratively dissolved in October 2013, and they did not create the new entity, Hickman Metal Recycling,

7

until December 2015. Moreover, in their 2012 non-compete agreement with SMM, the Hickmans agreed not to engage in any scrap metal or recycling business in Mississippi, and the non-compete agreement remained in effect until the arbitrator's ruling in July 2015.[3] Finally, during the Board hearing, several members of the community stated that the Hickmans' business had been out of operation for more than a year.

¶15. The Hickmans argue that a commercial lease agreement they signed with SMM shows that SMM continued scrap metal recycling operations on the subject property. However, the lease agreement stated that it was for a six-month term beginning in August 2012 and ending in February 2013. There is no evidence that the lease was extended. Nor is there any direct evidence that SMM ever conducted any scrap metal recycling on the subject property.

¶16. The Hickmans also presented invoices for scrap metal recycling services around July 2012 and a February 2012 bill of sale for a car crusher. However, this activity all predated the sale to SMM. As such, these documents do not contradict the Board's determination that the nonconforming use ceased for at least one year *after* the sale to SMM.

¶17. The Hickmans argue that the privilege licenses they obtained for David Motor from 2013 to 2016 demonstrate a continuation of the nonconforming use. However, as Creel noted, a privilege license only provides the licensee with the authority to engage in business; it does not establish that business or any particular activity was actually conducted on the subject property. Similarly, the Hickmans provided bank statements for Hickman Enterprises

---

[3] The arbitration award stated that the Hickmans "would like to open two scrap metal businesses on land that [David] owns in Biloxi," indicating that the Hickmans were not then engaged in such business on the subject property.

8

from 2013 and 2014. However, the bank statements cover only part of the disputed period, and more important, they only show that Hickman Enterprises had a bank account during that time. Nothing in the bank statements indicates that scrap metal recycling was being conducted on the subject property at any time.

¶18. The Hickmans also presented letters signed by two customers that stated that "Hickman Recycling ha[d] been doing a service for [the customers] by storing [certain materials] on [Hickman's] property since April of 2013" and "February of 2014," respectively. However, "storing" materials for two customers is not the equivalent of a scrap metal recycling business. Thus, the two letters do not establish that the Hickmans' preexisting nonconforming use continued for any time during the disputed period following the sale to SMM.

¶19. Finally, although some citizens stated at the public hearing before the Board that the Hickmans' scrap metal business had never ceased operations, a similar number told the Board that the nonconforming use had ceased for longer than a year. As stated above, this Court will not "reweigh the evidence" presented to the Board; rather, our role is only "to verify [that] substantial evidence exists." *Childs*, 1 So. 3d at 861 (¶19). Accordingly, the various public comments at the hearing before the Board provide no basis for reversal.

¶20. In summary, there is substantial evidence to support the Board's decision. The Board reasonably relied on evidence that the nonconforming use of the subject property ceased after the Hickmans sold their business in 2012 and did not resume until early 2016, and the Hickmans presented little evidence that any scrap metal recycling occurred on the subject

9

property during the same period of time. Applying our deferential standard of review, we conclude that the Board's decision is not arbitrary or capricious but is instead "fairly debatable." And because the Board's "decision is fairly debatable, we will not reverse it." *Hatfield*, 235 So. 3d at 21 (¶10) (brackets and quotation marks omitted).

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, McCARTY AND SMITH, JJ., CONCUR. LAWRENCE AND EMFINGER, JJ., NOT PARTICIPATING.**