DICKINSON, PRESIDING JUSTICE,
FOR THE COURT:
¶ 1. This case tests the limits of our judicial power to review the manner in which the Legislature carries out its procedural constitutional responsibilities. Article 4, Section 59 of the Mississippi Constitution provides that in the Mississippi Legislature “every bill shall be read in full immediately before the vote on its final passage upon the demand of any member.” When J.P. Hughes Jr., a member of the Legislature, requested that certain bills be read as required by that article, Speaker Phlip Gunn had the bills read by a machine at a speed that Rep. Hughes claims was incomprehensible and therefore a constitutional violation, leading him to file suit to stop the practice. We granted interlocutory appeal and now hold that we are without constitutional authority to resolve this dispute. We remand this case to the circuit court with instructions to dismiss the petition.
FACTS AND PROCEDURAL HISTORY
¶2. On March 23, 2016, Rep. Hughes filed a petition against Speaker Gunn in the circuit court, seeking a temporary restraining order, a preliminary injunction, and, alternatively, a writ of mandamus. Rep. Hughes’s petition asked the circuit judge to order the Speaker’s compliance— by injunction or writ of mandamus—with Article 4, Section 59 of the Mississippi Constitution, which states “every bill shall be read in full immediately before the vote on its final passage upon the demand of any member.” In his petition, Rep. Hughes acknowledges that Speaker Gunn had recognized members’ requests to have bills read under Article 4, Section 59, but in doing so, he had
*971 only partially obliged that request by having the words of the bills read by an electronic device (set on the highest speed adjustment, #10) such that the same is being read artificially and so quickly that no human ear nor mind can comprehend the words of the bills.
¶ 3. After finding that the circuit court had jurisdiction to resolve the dispute, a Hinds County circuit judge granted a temporary restraining order which stated that
the Respondent shall, consistent with Article 59 of the Mississippi Constitution, read or cause to be read all bills presented to the House of Representatives in a normal speed and audible level comprehensive lever [sic] so that each member of the House of Representatives has an opportunity to hear and understand each word of each such properly requested reading.
¶ 4. The order also set a hearing for March 28, 2016, but the next day, the Speaker moved to dissolve the temporary restraining order, arguing that he had complied with Article 5, Section 59; that Rep. Hughes had failed to satisfy several requirements to obtain a temporary restraining order ex parte; and that judicial intervention into the legislative matter was inappropriate.
¶ 5. That same day, the Speaker filed in this Court a petition for interlocutory appeal, or for writ of mandamus or prohibition from the circuit court’s temporary restraining order, arguing that Rep. Hughes had failed to satisfy the requirements to obtain an ex parte temporary restraining order, and that this Court should order the circuit court “to restrain the exercise of its supposed jurisdiction in contravention of the separation of powers doctrine embodied in Miss. Const. Art. 1 §§ 1-2 (1890).”
¶ 6. On March 24, 2016, we dissolved the temporary restraining order and stayed all proceedings in the circuit court, and we ordered Rep. Hughes to respond to the Speaker’s petition for interlocutory appeal, which he did. We then granted interlocutory appeal to “address (1) whether the judiciary has jurisdiction over this dispute in light of Sections 1 and 2, Article I of the Mississippi Constitution, and/or (2) whether this Court should refrain from exercising its jurisdiction over the issues raised in this matter.”
ANALYSIS
¶7. The Mississippi Constitution’s first section states that “[t]he powers of the government of the State of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.”[1] Its second section states that “[n]o person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others.” [2] The jurisdictional question presented is whether judicial intervention in this dispute would be an encroachment on a power conferred upon the Legislature in violation of Article 1, Section 2.
¶ 8. Rep. Hughes claims the Speaker has failed to comply with the requirements of Article 4, Section 59 of the Mississippi Constitution. He asks the judiciary to order the Speaker’s compliance through in-junctive relief. But we hold that this Court lacks constitutional authority to interfere in the procedural workings of the Legislature, even when those procedures are constitutionally mandated. This limitation on *972 our power has been recognized by this Court for more than a century.[3]
¶ 9. In Hunt v. Wright, we recognized that our power to review statutes for constitutional infirmity “commences after the termination of legislative action.”[4] In doing so, the Hunt Court made clear that the judiciary is “not an overseer of the legislature during its labors, but [this Court] takes its completed work, and tries it by the constitution, starting with the conclusive and irrebuttable presumption that as to all the requirements of that instrument they who swore to observe it did it.”[5]
¶ 10. While this case concerns a request for injunctive relief to order the Speaker to carry out a constitutional procedural requirement, not a request to invalidate a statute for some constitutional procedural defect in its enactment, Hunt recognizes that the Legislature possesses exclusive power over its own procedures.
¶ 11. The Hunt decision relied on this Court’s opinion in Ex parte Wren—decided before the adoption of our present Constitution—which unequivocally held that the judiciary lacks any constitutional authority to interfere in the Legislature’s internal procedure:
The legislature is one of the three coordinate and co-equal departments into which the powers of government are divided by the constitution, possessing all legislative power and not subject to supervision and control during its performance of its constitutional functions, nor to judicial revision afterward of the manner in which it obeyed the constitution its members are sworn to support.[6]
¶ 12. But in Tuck v. Blackmon—a more recent opinion that has muddied the constitutional water surrounding Article 4, Section 59—several Mississippi senators sought injunctive relief to enforce that provision.[7] Lieutenant Governor Amy Tuck, acting in her capacity as President of the Senate, had determined that Article 4, Section 59’s requirement that bills be read upon request did not apply to conference committee reports.[8] The senators who had requested a reading sought judicial review and injunctive relief on the question of whether a conference committee report constituted a bill for purposes of Article 4, Section 59.[9]
¶ 13. After a chancellor granted the senators an injunction, Lt. Gov. Tuck appealed, and this Court failed to apply the strict separation of powers required by the Mississippi Constitution, as recognized in Hunt and Wren.[10] The Tuck Court stated:
With respect to the separate powers of each branch of government, the courts will generally refrain from interfering with the Legislature’s interpretation and application of its procedural rules and with its internal operations.[11]
By saying we “generally refrain from interfering,” this Court committed error born of two sources.
*973 ¶ 14. First, the Tuck Court purported to apply this Court’s decision in Dye v. State ex rel. Hale, which considered a constitutional challenge on separation-of-powers grounds by several Mississippi senators to Senate rules granting the Lieutenant Governor—an executive officer—control over legislative matters.[12] But Dye addressed a different issue: this Court’s authority to enforce the Mississippi Constitution’s substantive separation of powers.
¶ 15. Second, the Tuck Court characterized the constitutional limits on this Court’s power as a matter of discretion left to the whims of this Court. In other words, this Court found that, although it had jurisdiction to review the constitutionality of the Legislature’s internal actions, it should not—as a matter of judicial restraint— exercise that jurisdiction unless the challenged conduct was manifestly unconstitutional.[13] The Court described this as the “well precedented and respected political question doctrine itself grounded in prudent judicial restraint.”[14]
¶ 16. But while Tuck correctly identified that the political question doctrine was at issue, it incorrectly described that doctrine as one of discretionary judicial restraint. The political question doctrine embodies the constitutional separation of powers between coequal branches of government,[15] setting the limit of the judiciary’s constitutional authority to resolve disputes when there arises either “ ‘a textually demonstrable constitutional commitment of the issue to a coordinate branch political department; or a lack of judicially discoverable and manageable standards for resolving it.’”[16] The Tuck Court’s holding to the contrary was erroneous. At least to the extent that the political question doctrine turns on “ ‘a textually demonstrable constitutional commitment of the issue to a coordinate branch political department” it cannot be considered a matter of discretion given the Mississippi Constitution’s absolute separation of powers.[17]
¶ 17. In sum, when the Tuck Court employed language suggesting the judiciary would refrain from exercising its power to interfere in legislative procedure, it nec *974 essarily implied it had that power in the first place. This ran afoul of Wren, Hunt, and the Mississippi- Constitution’s absolute separation of powers. So to be clear, to the extent Tuck held that the judiciary possesses some power to interfere in the Legislature’s internal procedure, we overrule it today.
¶ 18. By requesting the courts to force Speaker Gunn to read bills in a particular manner, Rep. Hughes seeks to involve the judiciary in legislative procedural matters. The text of our state Constitution that imposes upon the Legislature the obligation to read bills upon a member’s request, necessarily commits upon the Legislature the obligation to determine how that requirement will be carried out. So this case must be dismissed, not as a matter of judicial discretion, but because we are without constitutional authority to adjudicate it. The constitutional authority, and duty, to decide the matter lies squarely within the legislative branch of our government.
CONCLUSION
¶ 19. Because Rep. Hughes’s petition raises an issue the judiciary lacks constitutional authority to adjudicate, we remand this case to the circuit court with instructions to dismiss it.
¶ 20. REVERSED AND REMANDED.
WALLER, C.J., COLEMAN, MAXWELL AND BEAM, JJ„ CONCUR. RANDOLPH, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED IN PART BY BEAM, J. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J. CHAMBERLIN, J., NOT PARTICIPATING.

. Miss. Const, art. 1, § 1.

. Miss. Const, art. 1, § 2.

. Ex parte Wren, 63 Miss. 512, 533-34 (1886); Hunt v. Wright, 70 Miss. 298, 11 So. 608, 610 (1892).

. Hunt, 11 So. at 610.

. Id.

. Ex parte Wren, 63 Miss. at 533-34 (emphasis added).

. Tuck v. Blackmon, 798 So.2d 402, 404 (Miss. 2001).

. Id.

. Id. at 405.

. Id.

. Id. (emphasis added).

. Dye v. State ex rel. Hale, 507 So.2d 332, 334-35 (Miss. 1987).

. Tuck, 798 So.2d at 406.

. Id. at 407.

. Powell v. McCormack, 395 U.S. 486, 512, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

. Nixon v. U.S., 506 U.S. 224, 228, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993) (quoting Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).

. In this sense, this case is on all fours with the United States Supreme Court’s decision in Nixon v. United States. In Nixon, the United States House of Representatives brought articles of impeachment against Walter L. Nixon, Jr.—Chief Judge of the United States District Court for the Southern District of Mississippi—after Judge Nixon had been convicted of making false statements to a federal grand jury. When the House presented the articles to the United States Senate, the Senate invoked a procedural rule by which a committee of Senators reviewed the evidence supporting impeachment, and then the whole Senate reviewed a report on that evidence before voting to remove Nixon from office. Nixon sought judicial review, arguing that because the United States Constitution states that the Senate shall try all cases of impeachment, the Senate could not adopt a rule delegating that duty to a committee. Rather, he argued, the entire Senate must hear the evidence supporting impeachment. When the case reached the United States Supreme Court, that court considered whether Nixon’s constitutional claim implicated the political question doctrine. The Supreme Court concluded that the power to try impeachments had been committed to the Senate, not the judiciary. Nixon, 506 U.S. at 226-237, 113 S.Ct. 732.