# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CT-01062-SCT

*MARTIN WHEELAN*

*v.*

*CITY OF GAUTIER AND DAVID A. VINDICH*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/20/2019 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| TRIAL COURT ATTORNEYS: | A. KELLY SESSOMS, III |
| | WILLIAM BRIAN ATCHISON |
| | PHILLIP LANE NORWOOD |
| | JOHN MICHAEL McMAHAN |
| | NATHAN RYNE HAND |
| | ROBERT E. O'DELL |
| | EDWARD C. TAYLOR |
| | JEFFREY HARDY ANDREWS, JR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROBERT E. O'DELL |
| ATTORNEYS FOR APPELLEES: | EDWARD C. TAYLOR |
| | A. KELLY SESSOMS, III |
| | NATHAN RYNE HAND |
| | NICOLE WALL SULLIVAN |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND REMANDED - 02/03/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT**:

¶1.    The City of Gautier granted David Vindich a permit to build a 1,410 square foot

garage/workshop on his .76 acre lot.  When the building was almost completed, Vindich's

neighbor, Martin Wheelan, filed a lawsuit in the Jackson County Chancery Court.  He argued

the City's decision was unlawful because Vindich actually sought a variance, which requires a public hearing rather than a building permit. Thus, Wheelan said he was denied due process. Wheelan also claimed the City's decision was arbitrary and capricious and that the workshop "completely overwhelm[ed]" the neighborhood and created a nuisance.

¶2. After a trial, the chancellor dismissed Wheelan's claims, finding that the City's interpretation of the applicable ordinance was not manifestly unreasonable. The chancellor also found that the building was not a nuisance. Wheelan appealed, alleging that the City's decision violated Gautier's ordinance and that he and the other neighbors were deprived of due process because they did not receive notice of the City's proceedings on Vindich's application. The Court of Appeals affirmed in *Wheelan v. City of Gautier*, No. 2019-CA-01062 COA, 2021 WL 687254 (Miss. Ct. App. Feb. 23, 2021). The majority held that the City's building permit was not arbitrary, capricious, or without substantial basis and that Wheelan was not deprived of any due process rights. *Id.* (¶ 53). The separate opinion said that the City's interpretation of its ordinance cannot be upheld because it is manifestly unreasonable. *Id.* (¶ 69) (Wilson, P.J., concurring in part and dissenting in part).

¶3. Because the City's interpretation and application of the ordinance in the instant case renders other portions of the ordinance unworkable, we reverse the decisions of the Court of Appeals and the trial court.

**FACTS**

2

¶4. Land development in the City of Gautier is governed by a comprehensive land use/development plan referred to as the Unified Development Ordinance. The relevant portion of the ordinance provides:

> § 5.4.4(F) - Maximum Lot Coverage - Twenty-Five (25) percent for the principal structure and accessory structures. Accessory structures shall not exceed twenty (20) percent of the rear area or fifty (50) percent of the main building area, whichever is less.

¶5. Vindich's .76 acre lot is 33,105.6 square feet. Under the first sentence, the total of all structures on Vindich's property cannot exceed 8,276.4 square feet (25 percent of 33,105.6 square feet). Vindich's home, or "principal structure" is 2,843.74 square feet.

¶6. The parties dispute how the second sentence should be applied. The Unified Development Ordinance does not define "rear lot area" or "main building area." Initially, the City denied Vindich's application, saying that the "main building area" meant the size of Vindich's house and that Vindich was limited to approximately 1,420 square feet of accessory structures (half of his 2,843.75 square foot home). Vindich's property already contained a 140 square foot pool house, a 375 square foot gazebo, and a 614 square foot boat house, totaling 1,129 square feet. Accordingly, Vindich could only build an additional 293 square feet in accessory buildings. The Building Department did not address the portion of the Unified Development Ordinance that refers to "rear area."

¶7. Vindich disagreed with the Building Department's interpretation and appealed the decision to Gautier's Planning Commission. With his appeal, Vindich submitted his own interpretations of the Unified Development Ordinance and an official survey of his property and existing buildings. The survey confirmed that Vindich's home was 2,843.74 square feet

3

but showed that his three existing accessory buildings totaled 1.043.6 square feet. Noting the Unified Development Ordinance's ambiguity, Vindich applied two calculations/interpretations:

> If "main building area" means the entire lot, then accessory structures on Vindich's lot would be limited to 16,552.8 square feet (half of the total lot), so long as this area is less than twenty percent of the "rear area lot." Vindich calculated his "rear area lot" by subtracting both the area of his front yard (3,068.1 square feet) and his home's square footage (2,843.74) from the total square footage of his lot (33,105.6). According to Vindich, his "rear area lot" totaled 27,193.76. 20% of the "rear area lot" is 5,438.75 square feet, which is less than half the total lot. Vindich subtracted the total square footage of all the existing structures on his property (his home plus the three accessory buildings, for a total of 3,878.34 square feet) from the 20% to determine that he had about 1,600 square feet remaining to build another accessory structure.

> If "main building area" means the size of the home (2,943.74 square feet), then accessory structures would be limited to half the size of the home (1,421.98 square feet). Half the size of the home is less than 20% of the rear area lot (5,438.75 square feet). Vindich said his 1,400 square foot workshop met the UDO area criteria so long as the UDO limitations referred to **each** accessory building and not the total square footage of **all** accessory buildings.

¶8.     Prior to the Planning Commission's consideration of Vindich's appeal, Gautier's Planning and Economic Director, Chandra Nicholson, submitted an explanation for the Building Department's denial. According to Nicholson, the Building Department interpreted the Unified Development Ordinance as limiting total accessory building square footage to less than 50 percent of the square footage of the house. Nicholson noted that the Unified Development Ordinance refers to "accessory structures" in plural form, indicating that the square footage of all accessory buildings should be considered together. Nicholson did not address the portion of the Unified Development Ordinance that refers to the "rear area lot."

4

¶9. The Planning Commission agreed that the Unified Development Ordinance was not clear but ultimately voted four to three to reverse the Building Department's decision and allow Vindich to build the workshop. Still, the City Council had to approve the Planning Commission's decision. The Building Department advocated for its interpretation —that all accessory buildings combined together could not exceed 50 percent of the home's square footage. In another close, four-to-three vote, the City Council accepted the Planning Commission's decision to allow Vindich to build the 1,400 square foot workshop. The City's exact interpretation of the Unified Development Ordinance is absent from the record, but the City presents in its brief that it interpreted the phrase "main building area" to mean the "entire lot."

¶10. Vindich proceeded to build the workshop. Wheelan noticed the construction when he returned home from vacation and proceeded to measure the workshop's foundation. Wheelan then reviewed the Unified Development Ordinance and researched Vindich's appeal online. Believing the workshop violated the Unified Development Ordinance, prior to the workshop's completion, Wheelan filed a lawsuit in the Jackson County Chancery Court against Vindich, the City of Gautier, and the individual members of the City Council. Wheelan argued Vindich actually received a variance, which required a public hearing with notice. Wheelan also said the City Counsel's decision was "arbitrary and capricious, an abuse of discretion, beyond their legal authority, an abuse of power and unsupported by substantial evidence." Wheelan also raised a nuisance claim against Vindich. After a trial,

5

the chancery court dismissed Wheelan's claims, finding that the City's interpretation of the ordinance was not manifestly unreasonable.

*Court of Appeals Decision*

¶11.    On appeal, the Court of Appeals held

> that because the authority to interpret the wording of an ordinance is vested in the City Council and because the interpretation of the Unified Development Ordinance was debatable, the City Council's actions were not arbitrary, capricious, or manifestly unreasonable, and the chancery court did not abuse its discretion, apply an erroneous legal standard, or make a manifestly wrong finding.

*Wheelan*, 2021 WL 687254, at *10 (¶ 37).

¶12.    The majority of the Court of Appeals relied on ***Hatfield v. Board of Supervisors of Madison County***, 235 So. 3d 18 (Miss. 2017). ***Hatfield*** explained in great detail the Court's standard of involving local boards' interpreting and applying local ordinances: "[I]n construing a zoning ordinance, unless manifestly unreasonable, great weight should be given to the construction placed upon the words by the local authorities." ***Id.*** at 19 (¶ 1) (internal quotation marks omitted) (quoting ***Hall v. City of Ridgeland***, 37 So. 3d 25, 36 (Miss. 2010)). "And if the ordinance's application is 'fairly debatable,' the decision of the Board of Supervisors must be affirmed." ***Id.*** (quoting ***Saunders v. City of Jackson***, 511 So. 2d 902, 905 (Miss. 1987)). The Court further explained that:

> "[z]oning ordinances should be given a fair and reasonable construction, in the light of their terminology, the objects sought to be obtained, the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the zoning ordinance as a whole." A key function of a county board, city council, or board of alderman is to interpret its zoning ordinances. And '[t]he cardinal rule in construction of zoning ordinances is to give effect to the intent of the lawmaking body." Local

6

boards are in the most advantageous position to *interpret* and apply local ordinances. That is why "in construing zoning ordinance . . . great weight should be given to the construction placed upon the words by the local authorities." But our courts are certainly not bound by a board's interpretation of a local ordinance if it is "manifestly unreasonable." And we will reverse in such instances.

As to the ordinance's application, this Court will affirm a board's zoning decision unless it is clearly "arbitrary, capricious, discriminatory, illegal, or without [a]substantial evidentiary basis." If a board's zoning decision is "fairly debatable," we will not reverse it.

*Id.* at 20-21 (¶¶ 9-10) (alterations in original) (citations omitted).

¶13. The separate opinion in *Hatfield* stated that the Court should apply a higher, de novo standard of review "when interpreting an existing zoning ordinance[.]" *Id.* (¶ 38) (Coleman, J., concurring in part and in result). The separate opinion argued two points: (1) "an overwhelming majority of our sister states have held that reviews of interpretations of zoning ordinances are questions of law[;]" and (2) giving deference to local legislative bodies creates a "conflict with the usual *de novo* standard of review applicable questions of law and, further, indicate[s] that the Courts have ceded judicial power to other branches of government in violation of [separation of powers]." *Id.* (¶ 39).

¶14. In applying the standard of review articulated by this Court in *Hatfield*, the majority in the Court of Appeals in this case said that the city's interpretation—that the "main building area" is "the size of the lot"—"is one reasonable interpretation of [the Unified Development Ordinance]." *Wheelan*, 2021 WL 687254, at *11 (¶ 41) (internal quotation marks omitted). Thus, the Court of Appeals said the City's decision was fairly debatable and not manifestly unreasonable. *Id.*

7

¶15. In the Court of Appeals, an opinion concurring in part and dissenting in part recognized that the second sentence of the ordinance is ambiguous because it does not define "main building area." *Id.* at *20 (¶ 69) (internal quotation marks omitted) (Wilson, P.J., concurring in part and dissenting in part). The separate opinion said that the City's interpretation, however, "leads to absurd results and renders parts of the ordinance meaningless." *Id.* (¶ 71). The separate opinion provided two examples:

> while the City's interpretation of "main building area" would permit the homeowner to build accessory structures covering up to fifty percent of the 'entire lot,' the immediately preceding sentence of the ordinance limits the principal structure *and all accessory structures combined* to only *twenty-five percent* of the lot area. Logically, twenty-five percent of the lot area is *always* less than fifty percent of the lot. Therefore, the twenty-five percent limitation in the first sentence will *always* control — and the City's interpretation of the fifty-percent limitation will *never* apply. As a result, the City's interpretation of the phrase "main building area" renders that very phrase a nullity.
>
> The City's interpretation of "main building area" also cannot be reconciled with the first part of the same sentence. The first part of the sentence states that accessory structures "shall not exceed twenty (20) percent of the rear lot area." Logically, twenty percent of the rear area will *always* be less than fifty percent of the entire lot. Therefore, the twenty percent limitation will *always* control, and the City's interpretation of the fifty percent limitation will *never* apply. Thus, for this reason as well, the City's interpretation of "main building area" to mean the "entire lot" renders that phrase a nullity.

*Id.* (¶¶ 71-72) (footnote omitted).

## DISCUSSION

I.      Standard of Review

¶16.    As an initial matter, we take the present opportunity to bring our standard of review of local authorities' interpretations of zoning ordinances in line with our traditional and common law *de novo* standard when reviewing questions of law.

8

¶17.    The interpretation of zoning ordinances presents a question of law; almost all of our sister states have so noted.  *See, e.g.*, ***Perniciaro v. Hamed***, 309 So. 3d 813, 826 (La. Ct. App. 2020) ("Questions of law, such as the proper interpretation of a statute or ordinance, are reviewed under the *de novo* standard of review." (citing ***Jefferson Par. Firefighters Ass'n of Louisiana Loc. 1374 v. Par. of Jefferson***, 117 So. 3d 246 (La. Ct. App. 2013))); ***Unite Here! Local 5 v. Dep't of Planning and Permitting***, 454 P.3d 394, 406 (Haw. 2019) ("The interpretation of a statute, ordinance, or charter is a question of law reviewable <u>de novo</u>." (internal quotation marks omitted) (quoting ***Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan***, 953 P.2d 1315, 1327 (Haw. 1998))); ***Fink v. Mun. of Anchorage***, 424 P.3d 338, 342 (Alaska 2018); ***Flat Rock Wind, LLC v. Rush Cty. Area Bd. of Zoning Appeals***, 70 N.E.3d 848, 857 (¶ 23) (Ind. Ct. App. 2017) ("[A] review of the interpretation of a zoning ordinance is a question of law." (citing ***Story Bed & Breakfast, LLP, v. Brown Cnty. Area Plan Comm'n***, 819 N.E. 2d. 55, 65 (Ind. 2004))); ***Outfront Media, LLC v. Salt Lake City Corp.***, 416 P.3d 389, 394 n.13 (Utah 2017) (explaining that Utah courts give no deference to local board interpretations of ordinances); ***River's Edge Funeral Chapel & Crematory, Inc. v. Zoning Hearing Bd. of Tullytown Borough***, 150 A.3d 132, 139 (Pa. Commw. Ct. 2016) ("Whether a proposed use falls within a given zoning ordinance categorization is a question of law." (citing ***H.E. Rohrer, Inc. v. Zoning Hearing Bd. of Jackson Twp.***, 808 A.2d 1014 (Pa. Commw. Ct. 2002))); ***Kobyluck Bros., LLC v. Planning and Zoning Comm'n of Town of Waterford***, 167, 142 A.3d 1236, 1241 (Conn. App. Ct. 2016)); ("Although the position of the municipal land use agency is entitled to some

deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court . . . ." (quoting *Balf Co. v. Plan. & Zoning Comm'n of Town of Manchester*, 835 A.2d 474 (Conn. 2003)); *City of Dunwoody v. Discovery Practice Mgmt., Inc.*, 789 S.E.2d 386, 390 (Ga. Ct. App. 2016) ("The construction of a zoning ordinance is a question of law for the courts."(quoting *Haralson Cty. v. Taylor Junkyard of Bremen, Inc.*, 729 S.E.2d 357 (Ga. 2012), *disapproved of by City of Cumming v. Flowers*, 797 S.E.2d 846 (Ga. 2017)); *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75 (Minn. 2015) (acknowledging that the interpretation of an existing ordinance is a question of law subject to *de novo* review); *Drummy v. Town of Falmouth*, 25 N.E.3d 907, 908 (Mass. App. Ct. 2015) ("Interpretation of the town's by-law raises a question of law." (citing *Goldlust v. Bd. of Appeals of N. Andover*, 541 N.E.2d 1019 (Mass. App. Ct. 1989))); *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 414 (Tenn. 2013) ("A trial court's interpretation of statutes, procedural rules, and local ordinances involves questions of law which appellate courts review de novo without a presumption of correctness." (citing *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889 (Tenn. 2011))); *Columbro v. Lebabon Twp. Zoning Bd. of Adjustment*, 508, 38 A.3d 675, 680 (N.J. Super. Ct. App. Div. 2012) ("[T]he the interpretation of an ordinance is primarily a question of law." (internal quotation marks omitted) (quoting *Wyzykowski v. Rizas*, 626 A.2d 406 (N.J. 1993))); *Botz v. Bridger Canyon Plan. & Zoning Comm'n*, 289 P.3d 180, 184 (Mont. 2012) ("The interpretation and application of an ordinance are questions of law that this Court reviews *de novo* to determine whether they are correct." (citing *DeVoe v. City of Missoula*, 274 P.3d 752, 755 (Mont. 2012))); *Sutton v.*

*Town of Gilford*, 992 A.2d 709, 721 (N.H. 2010) ("The construction of the terms of a zoning ordinance is a question of law, which we review *de novo*."); *Aydelott v. City of Portland*, 990 A.2d 1024, 1026 (¶ 10) (Me. 2010) ("The interpretation of a local ordinance is a question of law, and we review that determination *de novo*." (internal quotation marks omitted)); *City of Pine Bluff v. S. States Police Benevolent Ass'n, Inc.*, 285 S.W.3d 217, 218-219 (Ark. 2008); *City of Mosier v. Hood River Sand, Gravel and Ready-Mix, Inc.*, 136 P.3d 1160, 1167 (Or. Ct. App. 2006) (acknowledging that Oregon appellate courts review the construction of ordinances as a matter of law); *Williams v. Dep't of Bldg. Dev. Serv. of Springfield*, 192 S.W.3d 545, 547 (Mo. Ct. App. 2006) ("Although the interpretation of a city ordinance is a question of law, the interpretation given to the language by the body in charge of its enactment and application is also entitled to great weight."(citing *HHC Med. Grp., P.C. v. City of Creve Coeur Bd. of Adjustment*, 99 S.W.3d 68 (Mo. Ct. App. 2003))); *Renkey v. Cnty. Bd.*, 634 S.E.2d 352, 355 (Va. 2006) (Interpretation of an ordinance "is a pure question of law subject to *de novo* review by this Court." (internal quotation mark omitted) (quoting *Virginia Polytechnic Inst. v. Interactive Return Serv., Inc.*, 626 S.E.2d 436 (Va. 2006))); *Smith v. Bernalillo Cnty.* 110 P.3d 496, 501 (N.M. 2005) ("Interpretation of a zoning ordinance is a matter of law that we review *de novo* using the same rules of construction that apply to statutes."); *Town of Erie v. Eason*, 18 P.3d 1271, 1274 (Colo. 2001) (interpretation of a municipal ordinance is a question of law and thus subject to *de novo* review); *Heilker v. Zoning Bd. of Appeals for Beaufort*, 552 S.E. 2d. 42, S.C. Ct. App. 2001); *Brandon Charter Twp. v. Tippett*, 616 N.W.2d 243, 245 (Mich. Ct. App. 2000)

(stating that because party asked the appellate court to interpret a zoning ordinance, he presented the court "with a question of law subject to review *de novo*." (citing ***Burt Twp. v. Dep't of Nat. Res.***, 593 N.W.2d 534 (Mich. 1999))); ***Kirkpatrick v. Vill. Council for Pinehurst***, 138 S.E.2d 338, 342 (N.C. Ct. App. 2000) ("[P]roper interpretation of a zoning ordinance is a question of law." (citing ***Ayers v. Bd. of Adjustment for Town of Robersonville Through Roberson***, 439 S.E.2d 199 (N.C. 1994))); ***Larsen v. Town of Colton***, 973 P.2d 1066, 1072 (Wash. Ct. App. 1999) ("Interpretation of a zoning ordinance is a question of law." (citing ***City of Mercer Island v. Kaltenbach***, 371 P.2d 1009 (Wash. 1962))); ***Schrank v. Pennington Cnty. Bd. of Comm'rs***, 584 N.W.2d 680, 683 (S.D. 1998) ("The meaning of terms in a zoning regulation is a matter of law for the court." (citing ***Cordell v. Codington Cnty.***, 526 N.W.2d 115 (S.D. 1994))); ***Whiteco Outdoor Adver. v. City of Tucson***, 972 P.2d 647, 649–50 (¶ 7) (Ariz. App.1998) (interpretation of an ordinance is a question of law that we review *de novo*); ***Di's, Inc. v. McKinney***, 673 A.2d 1199, 1204 (Del. 1996) ("[T]he Superior Court's interpretation of the zoning ordinance is a question of law, which we review *de novo*." (citing ***State v. Cephas***, 637 A.2d 20, 23 (Del. 1994))); ***Lauridsen v. City of Okoboji Bd. of Adjustment***, 554 N.W.2d 541, 543 (Iowa 1996) ("Although we give deference to the board of adjustment's interpretation of its city's zoning ordinances, final construction and interpretation of zoning ordinances is a question of law for us to decide." (citing ***Ernst v. Johnson Cnty.***, 522 N.W.2d 599, 602 (Iowa 1994))); ***Warren v. Zoning Bd. of Appeals of Fairfield***, 625 N.E.2d 1213, 1215 (Ill. App. Ct. 1994) ("The construction of a zoning ordinance is a question of law, and the reviewing court may

make an independent determination of questions of law."); *Ex parte Norwood*, 615 So. 2d 1210, 1212 (Ala. Civ. App. 1992) ("Construction of a zoning ordinance is a question of law. . . ." (citing *Civitans Care v. Bd. of Adjustment of the Cty. Of Huntsville*, 437 So. 2d 540 (1983))); *Kaiser v. Western R/C Flyers, Inc.*, 477 N.W.2d 557, 560 (Neb. 1991) ("The interpretation of a zoning ordinance presents a question of law . . . ."); *Hambleton v. Friedmann*, 344 N.W.2d 212, 213 (Wis. Ct. App. 1984) ("The meaning of an ordinance is a question of law that we independently decide."); *Dampman v. City of Baltimore*, 189 A.2d 631, 633 (Md. 1963) ("It thus appears that this case presents substantially no conflict as to fact but merely a question of law involving the construction of the zoning ordinance with reference to special exceptions."); *City of Norwalk v. Auction City, Inc.*, 186 Cal. App. 2d 287, 290, (Cal. Dist. Ct. App. 1960) ("The question of the construction of the ordinance is one of law."); *Mills v. Brown*, 316 S.W.2d 720, 723 (Tex. 1958) ("The same rules apply to the construction of municipal ordinances as to the construction of statutes.").

¶18.    Our cases make it clear that "[t]he ultimate authority and responsibility to interpret the law, including statutes, rests with this Court." *Queen City Nursing Ctr., Inc. v. Miss. State Dep't of Health*, 80 So. 3d 73, 84 (¶ 28) (Miss. 2011); *see also Miss. State & Sch. Emps.' Life & Health Plan v. KCC, Inc.*, 108 So. 3d 932, 939 (¶ 20) (Miss. 2013).  Courts have the duty to determine what statutes provide.  *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (¶ 7) (Miss. 2011).  Mississippi's Constitution requires a "strict separation of powers." *Gunn v. Hughes*, 210 So. 3d 969, 972 (¶ 13) (Miss. 2017) (citing *Tuck v. Blackmon*, 798 So. 2d 402, 410 (Miss. 2001), *overruled by Gunn*, 210 So. 3d 969). If, as we held in cases

such as *Gunn*, *Hooker*, and *Hunt v. Wright*, 70 Miss. 298, 11 So. 608 (1892), we must wholly refrain from exercising powers granted only to another branch of government, then surely we must embrace the inverse proposition and wholly exercise those powers and responsibilities conferred upon the courts. We cannot do so while we also defer to the interpretation of statutes—or ordinances—to other branches of government. Less than one year after our decision in *Hatfield v. Board of Supervisors of Madison County*, 235 So. 3d 18 (Miss. 2017), the Court, in a unanimous opinion, ended the practice of giving deference to executive-branch interpretations of statutes, largely due to the truth of the proposition set forth above, *i.e.*, that the courts have the duty to interpret the law. *King v. Miss. Mil. Dep't*, 245 So. 3d 404, 407-08 (¶¶ 10-11) (Miss. 2018). As the *King* Court pointed out, article 1, section 2, of our state's Constitution starkly forbids the sharing of power between different branches of government. *Id.*

¶19. Today, we overrule *Hatfield* and our other cases that established a standard of review deferential to local agencies on the pure questions of law presented in the interpretation of zoning ordinances. Such pure questions of law are to be reviewed *de novo*. To do otherwise would contradict our unanimous decision in *King* and perpetuate the continued concession to other branches of government the duty to interpret the law the Mississippi Constitution vests in the courts.

II.     The City's Interpretation

¶20. As Judge Wilson's concurrence in part and dissent in part noted, the City's interpretation of the zoning ordinance conflicts with Supreme Court decisions that preclude

14

a local governmental body from adopting a construction of its ordinance that renders meaningless other parts of the same ordinance. *Hemphill Constr. Co. v. City of Clarksdale*, 250 So. 3d 1258 (Miss. 2019); *Davis v. Miller*, 202 Miss. 880, 32 So. 2d 871 (1947). While the record is replete with hearings and claims, the legal issue at hand is straightforward, *i.e.*, whether or not the city's interpretation of Section 5.4.4.F is correct. Section 5.4.4.F states:

> **F.** **Maximum Lot Coverage**—Twenty-five (25) percent for the principal structure and accessory structures. Accessory structures shall not exceed twenty (20) percent of the rear lot area or fifty (50) percent of the main building area, whichever is less.

¶21. Here, we must consider the second sentence of the provision and the City's interpretation of "main building area." Because the ordinance does not define "main building area," and the phrase is subject to more than one reasonable interpretation, the provision is ambiguous. *Tellus Operating Grp., LLC v. Maxwell Energy, Inc.*, 156 So. 3d 255, 261 (¶ 16) (Miss. 2015) (citing *Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 607 (Miss. 2009), *abrogated on other grounds* by *King*, 245 So. 3d 404).

¶22. The Council voted to grant Vindich's building permit application. The City states that the Council interpreted the "main building area" to mean the "entire lot," which is the interpretation urged by Vindich before the Planning Commission and City Council. The City's planning director testified that the Council adopted Vindich's interpretation and that the planning commission has used it since.

15

¶23. Presiding Judge Wilson appropriately described the problems that result from the city's interpretation. Even under the old, deferential *Hatfield* standard of review, the problems were fatal to the city's interpretation.

> The problem is that the City's interpretation of Section 5.4.4.F leads to absurd results and renders parts of the ordinance meaningless. For example, while the City's interpretation of "main building area" would permit the homeowner to build accessory structures covering up to fifty percent of the "entire lot," the immediately preceding sentence of the ordinance limits the principal structure *and all accessory structures* combined to only *twenty-five percent* of the lot area. Logically, twenty-five percent of the lot is always less than fifty percent of the lot. Therefore, the twenty-five-percent limitation in the first sentence will *always* control—and the City's interpretation of the fifty-percent limitation will *never* apply. As a result, the city's interpretation of the phrase "main building area" renders that very phrase a nullity.

> The City's interpretation of "main building area" also cannot be reconciled with the first part of the same sentence. The first part of the sentence states that accessory structures "shall not exceed twenty (20) percent of the rear lot area." Logically, twenty percent of the rear lot area will always be less than fifty percent of the entire lot. Therefore, the twenty-percent limitation will always control, and the city's interpretation of the fifty-percent limitation will never apply. Thus, for this reason as well, the city's interpretation of "main building area" to mean the "entire lot" renders that very phrase a nullity.
> . . . .

> The City's interpretation of the ordinance in this case is manifestly unreasonable because it renders meaningless the "main building area" language and its fifty-percent limitation. As set out above, under the city's interpretation of the ordinance, this language and limitation will *never* apply. Such an interpretation of the ordinance is manifestly unreasonable and cannot be upheld if there is a reasonable alternative interpretation that will give effect to all of its provisions.

> Reasonable alternative interpretations are available. For example, "main building area" could be interpreted to mean the area of the main building on the property—in this case, Vindich's home. This was how the city's planning director originally interpreted the ordinance when he denied Vindich's application.

16

Moreover, this interpretation of "main building area" would permit two different reasonable alternative interpretations of the ordinance. In relevant part, the ordinance states, "Accessory structures shall not exceed . . . fifty (50) percent of the main building area . . . ." The City could interpret this language to mean that the combined area of all accessory structures on the property shall not exceed fifty percent of the area of the home. Because Vindich already has other accessory structures on his property, this interpretation would not permit him to build his 1,410-square-foot metal building. However, the City also reasonably could interpret the ordinance to mean only that no one accessory structure may exceed fifty percent of the area of the home—*i.e.*, as a limit on the size of each individual accessory structure, not a limit on the total area of all such structures. This interpretation *would* permit Vindich to build his metal building.

In addition, the phrase "main building area" reasonably could be interpreted as a reference to the "Maximum Lot Coverage" that the ordinance establishes for all principal and accessory structures, *i.e.*, twenty-five percent of the lot. That is, the "main building area" could be read to mean the maximum area that buildings may cover. The first sentence of the ordinance establishes that the principal structure and all accessory structures may not cover more than twenty-five percent of the lot—in this case, 8,276.4 square feet. The "main building area" limitation could be interpreted to permit the homeowner to allocate up to fifty percent of that area to accessory structures. This interpretation would also permit Vindich to build his 1,410-square-foot metal building.

In summary, the City's interpretation of Section 5.4.4.F of its UDO is manifestly unreasonable. Therefore, we should reverse the judgment of the chancery court with instructions to vacate the City Council's order granting the building permit. The Council would be free to revisit Vindich's application based on a reasonable interpretation of the ordinance.

*Wheelan*, 2021 WL 687254, at **20-22 (¶¶ 71-78) (Wilson, J., concurring in part and dissenting in part). As Presiding Judge Wilson reasoned, even in the *Hatfield* world in which the courts gave deference to other branches in interpreting the law, the City's interpretation of the ordinance fails. Now, Interpreting the law set forth by the ordinance *de novo*, we hold that the City erred in its interpretation.

¶24. We reverse the judgments of the Court of Appeals and of the Jackson County Chancery Court and remand the case to the Jackson County Chancery Court for further proceedings consistent with this opinion.

¶25. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., ISHEE AND GRIFFIS, JJ. CONCUR. CHAMBERLIN, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY MAXWELL AND BEAM, JJ.**

**CHAMBERLIN, JUSTICE, CONCURRING IN RESULT ONLY:**

¶26. I agree with the majority that the City's interpretation of the ordinance cannot stand. For the reasons set forth by the majority, the City's interpretation is manifestly unreasonable and constitutes an arbitrary and capricious decision. However, I write to express my disagreement with the majority's decision to abandon our long-standing precedent, reiterated recently in *Board of Supervisors of Hancock County v. Razz Halili Trust*, 320 So. 3d 490, 494 (Miss. 2021), of giving great weight to the construction placed on the words of a zoning ordinance by the local authorities and, when fairly debatable, allowing that interpretation to stand. Therefore, I concur in result only.

¶27. This deferential standard, and the law that has coalesced around it over the years is best summarized in *Hatfield v. Board of Supervisors of Madison County*, 235 So. 3d 18 (Miss. 2017), in which the Court explained:

> [Z]oning issues are "legislative in nature." *Thomas v. Bd. of Supervisors of Panola Cty.*, 45 So. 3d 1173, 1180 (Miss. 2010) (citing *Luter v. Hammon*, 529 So. 2d 625, 628 (Miss. 1988)). And "[z]oning ordinances should be given a fair and reasonable construction, in the light of their terminology, the objects sought to be obtained, the natural import of the words used in common and accepted usage, the setting in which they are employed,

18

and the general structure of the zoning ordinance as a whole." ***City of Gulfport v. Daniels***, 231 Miss. 599, 604–05, 97 So. 2d 218, 220 (1957). A key function of a county board, city council, or board of aldermen is to interpret its zoning ordinances. And "[t]he cardinal rule in construction of zoning ordinances is to give effect to the intent of the lawmaking body." ***Columbus & Greenville Ry. Co. v. Scales***, 578 So. 2d 275, 279 (Miss. 1991) (citations omitted). Local boards are in the most advantageous position to interpret and apply local ordinances. That is why "[i]n construing a zoning ordinance . . . great weight should be given to the construction placed upon the words by the local authorities." ***Id.*** (citations omitted). But our courts are certainly not bound by a board's interpretation of a local ordinance if it is "manifestly unreasonable." ***Id.*** And we will reverse in such instances.

> As to the ordinance's application, this Court will affirm a board's zoning decision unless it is clearly "arbitrary, capricious, discriminatory, illegal, or without [a] substantial evidentiary basis." ***Drews v. City of Hattiesburg***, 904 So. 2d 138, 140 (Miss. 2005) (citing ***Perez v. Garden Isle Cmty. Ass'n***, 882 So. 2d 217, 219 (Miss. 2004); ***Carpenter v. City of Petal***, 699 So. 2d 928, 932 (Miss. 1997)). If a board's zoning decision is "fairly debatable[,]" we will not reverse it. ***Id.***

***Hatfield***, 235 So. 3d at 20-21 (alterations in original).

¶28. As noted, zoning issues are "legislative in nature." ***Id.*** (internal quotation marks omitted) (quoting ***Thomas***, 45 So. 3d at 1180). Just as we do when interpreting statutes passed by the legislature, when there is ambiguity, we attempt to ascertain the intent of the lawmaking body. ***Am. Tower Asset Sub, LLC v. Marshall Cnty.***, 324 So. 3d 300, 302 (Miss. 2021) (quoting ***BancorpSouth Bank v. Duckett (In re Guardianship of Duckett)***, 991 So. 2d 1165, 1181-82 (Miss. 2008)). In that regard, we defer to what the legislature (and in our case, the City) intended. *De novo* simply means that an appellate court "sit[s] in the same position as the trial court but [is] not required to defer to the trial court's ruling." ***Jackson v. Payne***, 922 So. 2d 48, 51 (Miss. Ct. App. 2006). This does not eliminate the requirement

we give great weight to the local governing authority's construction, just as the trial court was required to do.

¶29.    One of the problems with abandoning this precedent is that it ignores the fact that local governing bodies, unlike the legislature, are also tasked with deciding zoning issues as well as enforcing the ordinances. Unlike the legislature, they are able to tell us through their acts what they intended.  As stated in *Hatfield*, the majority's view "overlooks the practical reality that, to resolve zoning issues, local governing boards must *interpret* ordinances to *apply* them."  *Hatfield*, 235 So. 3d at 21.

¶30.    There is no separation-of-powers problem.  This court is not ceding its obligation to interpret the ordinance.  On the contrary, we have specifically held that we are not bound by a local board's interpretation of it's ordinance and will not hesitate to reverse if the interpretation is "manifestly unreasonable." *Id.*  (internal quotation marks omitted) (quoting *Scales*, 578 So. 2d at 279).  While maintaining our constitutional role as the interpreters of the law, this Court recognized in *Hatfield* that the local governing authorities are the creators and enforcers of local law.  *Id.*  In that regard, the local governing bodies are in the best position, subject to the limitations placed upon them by this Court, to apply their ordinances.

¶31.    The majority's reliance on *King* is misplaced in that *King* involved an administrative agency's interpreting a legislatively passed statute. *King v. Miss. Mil. Dep't*, 245 So. 3d 404, 407 (Miss. 2018).  Our case involves deference to an elected governing board's construction of an ordinance that it passed.  Also, unlike *King*, our pronouncements describing the level

20

of deference in regard to zoning decisions have not been vague or contradictory. *See id.* at 408.

¶32.   I believe that reversing our years of precedent in this case is the wrong course and I, therefore, concur in result only.

**MAXWELL AND BEAM, JJ., JOIN THIS OPINION.**